No. 23-30908
# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

INCLUSIVE LOUISIANA; MOUNT TRIUMPH BAPTIST CHURCH; RISE ST. JAMES, by and through their members,

*Plaintiffs - Appellants,*

v.

ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION,

*Defendants - Appellees.*

---

On appeal from United States District Court for the Eastern District of Louisiana, Case No. 2:23-cv-00987

---

## APPELLANTS' OPENING BRIEF

---

<table>
<tr><td>

Astha Sharma Pokharel
Baher Azmy
Sadaf Doost
Pamela Spees
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012

William P. Quigley
Loyola University College of Law
7214 St. Charles Ave.
New Orleans, LA 70118

*Counsel for Appellants Inclusive Louisiana and Mount Triumph Baptist Church*

</td><td>

Clara Potter
Devin A. Lowell
William Veazey, Law Student Counsel
Zoe Berg, Law Student Counsel
Tulane Environmental Law Clinic
6329 Freret Street
New Orleans, LA 70118

*Counsel for Appellant RISE St. James*

</td></tr>
</table>

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.1 have an interest in

the outcome of this case. These representations are made in order that the judges of

this court may evaluate possible disqualification or recusal.

**A. Plaintiffs-Appellants**

1. Inclusive Louisiana
2. Mount Triumph Baptist Church
3. RISE St. James

**B. Attorneys for Plaintiffs-Appellants Inclusive Louisiana and Mount Triumph Baptist Church**

1. Baher Azmy
2. Sadaf Doost
3. Pamela C. Spees
4. Astha Sharma Pokharel
5. William P. Quigley

**C. Attorneys for Plaintiffs-Appellants RISE St. James**

1. Clara Potter
2. Devin A. Lowell
3. Zoe Berg
4. William Veazey

**D. Defendant-Appellant**

1. St. James Parish

**E. Attorneys for Defendant-Appellant**

1. Danielle Lauren Borel
2. John Baird King

3. Carroll Devillier
4. Victor J. Frankiewicz, Jr., Butler Snow, L.L.P., Counsel for the Parish on other land use matters

Undersigned counsel also certifies that Inclusive Louisiana, RISE St. James, and Mount Triumph Baptist Church have no parent corporation, and that no publicly held company holds 10% or more of the stock of Inclusive Louisiana, RISE St. James, or Mount Triumph Baptist Church.

/s/Astha Sharma Pokharel
Astha Sharma Pokharel

## REQUEST FOR ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3, Plaintiffs-Appellants respectfully suggest that oral argument would be useful to assist the court in the disposition of the complex questions in this case. In particular, because the various legal issues upon which the district court ultimately dismissed the case implicate factually intensive questions, Plaintiffs-Appellants respectfully submit the Court would benefit from the elucidation oral argument would provide.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................. **Error! Bookmark not defined.**

JURISDICTIONAL STATEMENT ...................................................... vi

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................1

STATEMENT OF THE CASE...................................................................3

   A.  Introduction .................................................................................3

   B.  Statement of Facts .......................................................................5

      1.  The Beginnings of the Parish's Discriminatory Land Use Pattern and Practice........................................................................................6

      2.  The Parish Codifies the Discriminatory Pattern and Practice.......................7

      3.  The Parish's Subsequent Discriminatory Land Use Actions, Protecting Majority-White Districts While Sacrificing Majority-Black Districts...............9

      4.  Continuing Violations: The Parish's Enforcement of the Discriminatory Pattern and Practice Since March 21, 2022, Within the Limitations Period for Claims I-IV .............................................................................10

      5.  The Parish's Land Use Decisions Since March 21, 2019 That Discriminate Against Baptist Churches .................................................................13

      6.  The Parish's Land Use Decisions that Harm Ancestral Burial Grounds ....13

   C.  Proceedings Below ....................................................................15

   D.  The District Court's Decision........................................................17

SUMMARY OF THE ARGUMENT ....................................................18

ARGUMENT ...............................................................................22

   I.   STANDARD OF REVIEW.........................................................22

   II.  THE DISTRICT COURT ERRED IN DISMISSING CLAIMS I-IV AND VI AS UNTIMELY: CLAIMS I-IV ARE BASED ON CONTINUING VIOLATIONS CARRYING INTO THE LIMITATIONS PERIOD AND CLAIM VI IS BASED ON UNLAWFUL ACTS THAT OCCURRED WELL WITHIN THE LIMITATIONS PERIOD.........................................................23

     A.  Claims I-IV Are Timely Because They Are Based on a Longstanding Discriminatory Pattern, Practice, and Policy That Has Continued Into The One-Year Limitations Period..................................................................24

1.   The Continuing Violations Doctrine ......................................................24

2.   Plaintiffs' Claims I-IV Are Based on a Longstanding Pattern, Practice, and Policy Which Has Been Continuously Enforced By the Parish Through Several Acts Within the One-Year Limitations Period. ..................................29

3.   The District Court Erred by Applying a Notice Limitation to Plaintiffs' Claim, Which Has Been Rejected by the Supreme Court. .............................35

B.   Claim VI: Plaintiffs' RLUIPA Nondiscrimination Claim Is Also Timely Because the Parish Has Made Several Discriminatory Permitting Decisions Within The RLUIPA Four-Year Limitations Period........................................38

III. THE DISTRICT COURT ERRED BY: DISMISSING CLAIMS V AND VII FOR LACK OF STANDING; FINDING THAT PLAINTIFFS MOUNT TRIUMPH AND RISE HAD NOT SUFFICIENTLY PLED PROPERTY INJURIES; AND FINDING THAT PLAINTIFFS HAD NOT SUFFICIENTLY PLED STIGMATIC HARM...................................................................................40

A.   The District Court Erred in Ruling that Plaintiffs Did Not Have Standing to Bring Claims V (RLUIPA Substantial Burden) and VII (Louisiana Constitution Art. XII). ......................................................................................................43

1.   Plaintiffs' Religious Injuries Stem From the Current and Future Destruction of Ancestral Cemeteries Allowed by the Parish, Not From Third Parties' Restricting Plaintiffs' Access to Them. ...........................................44

2.   Plaintiffs' Standing Under Claim VII and Other Claims is Also Based on Injury to the Historic and Aesthetic Value of the Area. .................................47

B.   The District Court Erred in Finding That RISE and Mount Triumph Did Not Have Standing for Their Property-Related Injuries. .................................49

C.   The Court Erred in Ruling That Plaintiffs Do Not Have Standing Based on Stigmatic Harm. ...............................................................................................50

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Allen v. Wright*,
 468 U.S. 737 (1984) ................................................................. 51

*Banks v. McInstosh Cnty.*,
 2022 WL 400810 (S.D. Ga. Feb. 9, 2022) .......................................... 28

*Bennett v. Spear*,
 520 U.S. 154 (1997) ........................................................... 42, 43

*Boswell v. Claiborne Par. Det. Ctr.*,
 629 Fed. App'x 580 (5th Cir. 2015) ................................... 25, 26, 34, 37

*Cinel v. Connick*,
 15 F.3d 1338 (5th Cir. 1994) ..................................................... 12

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
 807 F.3d 1031 (9th Cir. 2015) .................................................... 46

*Dean v. City of Shreveport*,
 438 F.3d 448 (5th Cir. 2006) ..................................................... 51

*Dep't of Com. v. New York*,
 139 S. Ct. 2551 (2019) .......................................................... 43

*DiCocco v. Garland*,
 52 F.4th 588 (4th Cir. 2022) .................................................... 42

*Dubose v. Kansas City S. Ry. Co.*,
 729 F.2d 1026 (5th Cir. 1984) ................................................... 41

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
 528 U.S. 167 (2000) ............................................................. 45

*Havens Realty Corp. v. Coleman*,
 455 U.S. 363 (1982) ...................................................... 19, 25, 26

*Haverkamp v. Linthicum*,
 6 F.4th 662 (5th Cir. 2021) ..................................................... 22

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*,
 850 F.3d 731 (5th Cir. 2017) ............................................ 25, 33, 36

*Heckler v. Matthews*,
 465 U.S. 728 (1984) ............................................................ 51

*Humphreys v. Bennett Oil Corp.*,
 195 La. 531, 197 So. 222 ........................................................ 45

*Jenkins v. McKeithen*,
 395 U.S. 411 (1969) ............................................................. 50

*Jervis v. Mitcheff*,
 258 F. App'x 3 (7th Cir. 2007) .................................................. 34

*Jones v. Lumpkin*,
    2023 WL 3075063 (5th Cir. Apr. 25, 2023) ....................................... 38
*K.P. v. LeBlanc*,
    627 F.3d 115 (5th Cir. 2010)............................................................. 42
*Katz v. Vill. of Beverly Hills*,
    677 F. App'x 232 (6th Cir. 2017) ...................................................... 26
*Kennedy v. City of Zanesville*,
    505 F. Supp. 2d 456 (S.D. Ohio 2007) ......................................... 27, 28
*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
    422 F.3d 490 (7th Cir. 2005)............................................................. 47
*Locke v. Lester*,
    78 So. 2d 14 (La. App. 2 Cir. 1955)................................................... 45
*Lowrey v. Tex. A & M Univ. Sys.*,
    117 F.3d 242 (5th Cir. 1997)............................................................. 22
*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................... 42, 48, 54
*McGregor v. Louisiana State Univ. Bd. Of Supervisors*,
    3 F.3d 850 (5th Cir. 1993)........................................................... 36, 37
*Moore v. Bryant*,
    853 F.3d 245 (5th Cir. 2017)............................................................. 51
*NAACP v. Tindell*,
    90 F.4th 419 (5th Cir. 2024) ............................................................. 42
*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) .................................................................... 20, 36
*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993) .................................................................... 52, 54
*Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U*,
    46 F.3d 682 (7th Cir. 1995)............................................................... 28
*Perez v. Laredo Junior Coll.*,
    706 F.2d 731 (5th Cir. 1983)......................................................... 37, 25
*Pit River Tribe v. U.S. Forest Serv.*,
    469 F.3d 768 (9th Cir. 2006)............................................................. 46
*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
    517 F.2d 117 (5th Cir. 1975)............................................................. 29
*Pye v. United States*,
    269 F.3d 459 (4th Cir. 2001)......................................................... 46, 47
*Riddle v. Dyncorp Int'l Inc.*,
    666 F.3d 940 (5th Cir. 2012)............................................................. 22
*Riverie v. Mills*,
    481 So. 2d 1050 (La. App. 1 Cir. 1985)............................................. 45

*Sierra Club v. Cedar Point Oil Co. Inc.*,
  73 F.3d 546 (5th Cir. 1996)......................................................... 22
*Sierra v. City of Hallandale Beach*,
  996 F.3d 1110 (11th Cir. 2021)................................................... 51
*Silva v. Baptist Health S. Fla.*, Inc.,
  856 F.3d 824 (11th Cir. 2017)..................................................... 35
*State ex rel Tureau v. Bepco LP*,
  351 So. 3d 297 (La. 2022)........................................................... 41
*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009).................................................................... 48
*Texas Cable & Telecommunications Ass'n v. Hudson*,
  265 F. App'x 210 (5th Cir. 2008)................................................ 43
*Texas v. United States*,
  891 F.3d 553 (5th Cir. 2018)................................................ 36, 37
*United States v. City of Parma*,
  661 F.2d 562 (6th Cir. 1981)................................................ 26, 27
*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
  517 U.S. 544 (1996).................................................................... 42
*United States v. Herrera-Ochoa*,
  245 F.3d 495 (5th Cir. 2001)....................................................... 12
*Vidrine v. Vidrine*,
  225 So. 2d 691 (La. App. 3 Cir. 1969)....................................... 45
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977).................................................................... 34
*Virginia Hosp. Ass'n v. Baliles*,
  868 F.2d 653 (4th Cir. 1989)....................................................... 26
*Waterford Citizens' Ass'n v. Reilly*,
  970 F.2d 1287 (4th Cir. 1992)..................................................... 46
*Yumilicious Franchise, L.L.C. v. Barrie*,
  819 F.3d 170 (5th Cir. 2016)....................................................... 18

## Statutes & Ordinances

28 U.S.C. § 1291 ............................................................................. 1
28 U.S.C. § 1331 ............................................................................. 1
28 U.S.C. § 1343 ............................................................................. 1
28 U.S.C. § 1658(a) ......................................................... 20, 24, 38, 40
42 U.S.C. § 1982............................................................... Passim

42 U.S.C. § 1983 ...................................................................................... Passim
42 U.S.C. § 1988 ............................................................................................ 16
42 U.S.C. § 2000cc ................................................................................... Passim
28 U.S.C. § 2201 ............................................................................................... 1
28 U.S.C. § 2202 ............................................................................................... 1
LSA-C.C. Art. 3447 ....................................................................................... 41
LSA-C.C. Art. 3651 ....................................................................................... 41
St. James Par., Ordinances, § 82-25 ............................................................... 7

## Constitutions

U.S. Const. amend. XIII ............................................................................ Passim
U.S. Const. amend. XIV, §1 ..................................................................... Passim
La. Const. Art. XII, Sec. 4 ........................................................................ Passim

## Rules

Fed. R. App. P. 4(a)(1)(A) .............................................................................. 1
Fed. R. Civ. P. 15(a)(1)(B) ............................................................................ 16
Fed. R. Civ. P. 26(c) ...................................................................................... 17
Fed. R. Civ. P. 12(b)(1) ................................................................................. 16
Fed R. Civ. P. 12(b)(6) .................................................................................. 16
Fed R. Civ. P. 12(f) ....................................................................................... 16

## Other Authorities

Proceedings of the Planning Commission, Parish of St. James, State of Louisiana,
    *A Resolution Approving the Application of Koch Methanol, St. James, LLC
    Under the St. James Parish Land Use Ordinance, with Conditions (Item # 23-25)*
    (Jul 31, 2023), ............................................................................................ 12
Official Proceedings of the Council of the Parish of St. James, State of Louisiana,
    (Sept. 27, 2023) .......................................................................................... 12
Official Proceedings of the Council of the Parish of St. James, State of Louisiana,
    *Resolution 23-212, A Resolution Approving the Application of Acadian Pipeline
    to Allow Installation of A 20-Inch Diameter Pipeline to Koch Methanol, Which
    Consists of 7,412 Feet of New Pipe from the Existing Acadian's Pipeline, Use in
    A Residential Growth Area 5883 St. Emma Street, St. James, Louisiana (Item
    #23-27) Under the St. James Parish Land Use Ordinance, with Conditions* (Oct
    11, 2023) ...................................................................................................... 12

## JURISDICTIONAL STATEMENT

The Eastern District of Louisiana had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, 42 U.S.C § 2000cc et seq., and 42 U.S.C. §§ 1982, 1983.

This Court has jurisdiction over this appeal from the district court's final judgment pursuant to 28 U.S.C. § 1291, which was entered on November 21, 2023. ROA.1035. On December 20, 2023, Plaintiffs filed a timely notice of appeal from the district court's entry of final judgment. ROA.1036. Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the district court err in dismissing Claim I (Thirteenth Amendment), Claim II (Equal Protection), Claim III (Substantive Due Process - Bodily Integrity), and Claim IV (42 U.S.C. § 1982) on statute of limitations grounds by miscasting these claims as challenging a discrete act, when Plaintiffs clearly challenge a longstanding pattern and practice of racially discriminatory land use decisions, which constitutes a continuing violation that cannot be dismissed as untimely because at least one act in this pattern and practice occurred within the limitations period?

2.     Did the district court err in dismissing Claim VI (Religious Land Use and Institutionalized Persons Act ("RLUIPA") Non-discrimination) on statute of limitations grounds where the Parish has, within the governing four-year

limitations period, imposed or implemented a land use regulation in a manner that discriminates against Baptist churches in majority-Black districts in the Parish?

3.      Did the district court err in dismissing Claims V (RLUIPA Substantial Burden) and VII (Louisiana Constitution Art. XII) and concluding that Plaintiffs failed to demonstrate these injuries were traceable to the Parish's conduct, where the district court failed to credit Plaintiffs' allegations and take them in the light most favorable to Plaintiffs, and where those extensive allegations plausibly show that the Parish's repeated approval of industrial facilities on sacred burial sites where Plaintiffs' ancestors are buried injured Plaintiffs' religious practice?

4.      Did the district court err in dismissing Claim VII (Louisiana Constitution Art. XII) on the grounds that Plaintiffs did not show standing based on a religious injury, where Plaintiffs nevertheless allege other, independent injuries–namely harm to the historic and aesthetic value of the area–sufficient to confer standing for this Claim?

5.      Did the district court err in finding that Plaintiffs Mount Triumph Baptist Church and RISE St. James did not sufficiently allege standing based on injuries to their properties, when they have pled ample facts that plausibly show that their properties or their members' properties are located in a heavily industrialized District, and that the value of those properties has diminished as a

result of the Parish's unlawful pattern and practice of steering polluting industry into that District?

6.    Did the district court err in finding that Plaintiffs did not sufficiently allege stigmatic harm standing, where Plaintiffs' extensive allegations plausibly show the Parish has engaged in a pattern and practice of steering harmful industry into majority-Black districts, in which Plaintiffs' members, who are Black, reside, and which plausibly demonstrates the Parish's disregard for the health and lives of Black residents of the Parish?

**STATEMENT OF THE CASE**

**A. Introduction**

Plaintiffs, two faith- and community-based organizations and a church, challenge St. James Parish's ("Parish") generations-long and continually-reinforced pattern and practice of discriminatory land use decisions that has intentionally steered harmful industrial facilities exclusively into the majority-Black districts of the Parish in which Plaintiffs' members and congregants live and own property.

This pattern and practice, rooted in slavery and its afterlife, has transformed Plaintiffs' communities into industrial sacrifice zones. ROA.597-598 [¶¶1-4]. The Parish's ongoing actions harm these historic Black communities and their historic, cultural, and religious sites—including cemeteries of people once enslaved in the

Parish. ROA.599-580 [¶¶5, 7-9, 12]. Despite Plaintiffs' efforts to protect their health, property, religion, environment, history, culture, and dignity, ROA.599-596 [¶¶4,7], this discrimination continues unabated through today: as recently as August 17, 2022 as alleged in the Complaint, ROA.685 [¶341], and July and October 2023 as described below, the Parish has taken several actions to continue its enforcement of this pattern and practice.

To end the Parish's discriminatory land use decision-making, Plaintiffs bring Thirteenth Amendment, Equal Protection, Substantive Due Process, 42 U.S.C. § 1982, and Louisiana Constitutional claims. ROA.731-737, 741-742. Plaintiffs also bring two claims under RLUIPA. First, Plaintiff Mount Triumph Baptist Church ("Mount Triumph") claims that the Parish has violated RLUIPA's nondiscrimination provision by imposing or implementing a land use regulation in a manner that protects Catholic churches but not Baptist churches in the Parish. ROA.738-739. Second, all Plaintiffs claim that the Parish has violated RLUIPA's substantial burden provision by approving industrial facilities which have destroyed and threaten to destroy sacred cemeteries of Plaintiffs' members' ancestors: people once enslaved in the Parish. ROA.739-741.

After enduring this decades-long harm, Plaintiffs should not be denied their day in court by a ruling that would shield ongoing invidious racial and religious discrimination.

4

**B. Statement of Facts**

Plaintiffs are three organizations with Black members and congregants who live, work, and worship in the Parish's historically and majority-Black Fourth and Fifth districts. Plaintiff Inclusive Louisiana is a non-profit, grassroots community advocacy organization based in St. James Parish, undertaking work grounded in their Christian faith. ROA.605-606 [¶23]. Mount Triumph, "the little church with a big heart," is a Baptist church founded in 1904 by individuals emancipated from slavery, and engages in community outreach and care for sick members of the Parish. ROA.606-607 [¶24]. RISE St. James ("RISE") is a faith-based, grassroots organization focused on environmental justice causes. ROA.607 [¶25]. All Plaintiffs have founders and members or congregants who are descendants of people enslaved on plantations in the Parish. ROA.605-607 [¶¶23-25].

The Parish controls all land use decision-making in Plaintiffs' districts. ROA.607-609 [¶26]. Plaintiffs allege that the Parish's decades-long pattern and practice policy of directing industrial facilities to the majority-Black Fourth and Fifth districts, while sparing majority-white parts of the Parish from such dangerous land use decisions, constitutes a continuing, consciously-reinforced form of racial discrimination. ROA.731-737 [¶¶554, 564, 572, 579]. This pattern and practice has grave impacts on Plaintiffs' members' environment, health, properties, religion, historic sites, and dignity. *See, e.g.*, ROA.704-718 [¶¶433-

493]. The resulting health impacts are so devastating that the area where Plaintiffs live is now widely known as "Cancer Alley." ROA.655 [¶211]. Fifth District residents, who in 2020 were 89% Black and in 2010 were 87% Black, rank 89th percentile statewide and 95th-100th percentile nationwide for risk of developing cancer due to exposure to toxic air pollution ("Air Toxic Cancer Risk"). ROA.704 [¶436]. Fourth District residents, who in 2020 were 52% Black and in 2010 were 61% Black, rank 95th percentile statewide and 95th-100th percentile nationwide for Air Toxic Cancer Risk. ROA.705 [¶437].

### 1.   The Beginnings of the Parish's Discriminatory Land Use Pattern and Practice

In 1958, heavy industry first entered St. James Parish. ROA.646 [¶181]. Since then, the Parish has sited at least twenty-four industrial facilities, at least twenty of which have been steered into the majority-Black Fourth and Fifth districts, many of which are in or near historic Black communities. ROA.598 [¶4]; ROA.686-687 [¶347]. By contrast, no facility has been allowed to locate in or near predominately white parts of the Parish in over 46 years. ROA.686 [¶347].

In 1966, for example, Parish leadership made plans to develop a $50 million phosphoric acid complex in the Fourth District's historic Black community of Convent. ROA.647-648 [¶¶187-188]. This facility rests on the former site of the Uncle Sam plantation and today is a radioactive acidic waste lake owned and operated by fertilizer company Mosaic, ROA.648 [¶188], and is within one mile of

Mount Triumph and two miles of historic Romeville. ROA.649 [¶190]. Mosaic

operates another facility, Mosaic Faustina, in the majority-Black Fifth District.

ROA.650 [¶195-196]. These facilities expose their neighbors, including

congregants of Mount Triumph and founding members of Inclusive Louisiana, to

high levels of toxic air emissions. ROA.650-651 [¶¶192, 196-197].

The Parish has continued siting industrial facilities on former plantations,

near majority-Black churches, and in its majority-Black districts in the subsequent

decades. *See* ROA.651 [¶199] (NuStar petroleum storage terminal sited on LaPlace

Plantation grounds in 1968, within 600 feet of Mount Triumph); ROA.653 [¶203]

(America's Styrenics sited on Lauderdale Plantation grounds in 1971); ROA.665-

710 [¶¶256-257, 462] (Occidental Chemical sited in 1981, near Inclusive Louisiana

members in Romeville and less than two miles from Mosaic Uncle Sam);

ROA.657 [¶220] (proposed siting of Shintech polyvinyl chloride plant in Convent,

in 1996); ROA.663-665 [¶¶248-255] (Nucor Steel constructed in 2011 on the site

where Shintech intended to locate, within a mile of the historic Black community

of Romeville, which includes a church and cemetery).

## 2. The Parish Codifies the Discriminatory Pattern and Practice

On April 2, 2014, the Parish Council adopted a formal Land Use Plan (the

"2014 Plan" or "Plan"), St. James Par., Ordinances, § 82-25, which merely reduced

to writing this pre-existing pattern and practice, and which Plaintiffs assert is

7

further evidence of the Parish's continuing racially and religiously discriminatory land use system. ROA.675 [¶291]. As discussed further below, the speedy adoption of the Plan helped the Parish keep two major industrial facilities from locating in majority-white parts of the Parish. The Plan designated overwhelming portions of the Fourth and Fifth district as "Industrial," demonstrating the Parish's clear intent to continue sacrificing those areas to harmful industry. ROA.671 [¶280]. It also designated residential areas in the Fourth and Fifth districts as "Existing Residential/Future Industrial," demonstrating an intent to end these historic Black communities. ROA.672 [¶¶284-286]. Additionally, the "Future Industrial" designation limited residents' ability to subdivide and sell their land to anybody except immediate family members. ROA.674 [¶289]. This designation was not used in any other district under the Plan. ROA.672 [¶284].

Further embodying the Parish's historically discriminatory practice, the 2014 Plan also provided two-mile buffer zones separating industrial sites from some schools, Catholic churches, and plantations—but concentrated the protections afforded by those buffer zones in majority-white parts of the Parish. ROA.671-673 [¶¶280, 287]. The Plan did not provide buffer zone protections to several predominantly Black schools, like St. James High School, and churches, including Mount Triumph, Pleasant Hill Baptist Church, Burton Lane Church, and St. Paul Church. ROA.671 [¶281].

The Parish Council approved amendments to the Plan on May 3, 2018, which, on its face, removed the explicit two-mile buffer zone protections. ROA.676 [¶300]. Though explicit references to buffer zones were removed, all subsequent land use decisions by the Parish have treated those buffer zones as though they exist: protecting Catholic churches in majority-white districts, while sacrificing Baptist churches in majority-Black districts to industry. ROA.676-677 [¶¶300, 303]. The amended Plan also expanded industrially designated areas in the Fifth District and changed the land use designation there from "Existing Residential/Future Industrial" to "Residential Growth," but did not alter the Fourth District's "Existing Residential/Future Industrial" designation. ROA.677 [¶301].

**3.    The Parish's Subsequent Discriminatory Land Use Actions, Protecting Majority-White Districts While Sacrificing Majority-Black Districts**

While the Land Use Plan allows the Parish to continue easily directing heavy industrial facilities to the Fourth and Fifth districts, the Parish has at times chosen to ignore even the nominal constraints in the Plan when approving sites in these majority-Black districts. On March 25, 2015, the Parish Planning Commission approved an industrial development land use application for YCI Methanol in the Fifth District. ROA.700 [¶410]. This approval violated the Plan as it would be in an area designated for residential growth, not industrial development. ROA.700 [¶¶410-411]. This is in addition to the fact the facility

would be built on top of St. James High School, which was not afforded a two-mile buffer zone like schools in the majority-white parts of the Parish. *Id.*

On August 8, 2018, the Parish approved expansion of Ergon St. James Inc.'s crude oil terminal, within 500 feet of Mount Triumph in the Fifth District, in conflict with the Land Use Plan because it was approved in an area designated for agricultural, not industrial, use. ROA.701 [¶¶417-418].

Thus, the Parish has overlooked the Plan's minimal restrictions when it sought to locate heavy industry in majority-Black districts, but aggressively enforced the Plan's restrictions on heavy industry in majority-white parts of the Parish. *See* ROA.678-680 [¶¶307-315] (in 2014, Parish denied Wolverine Terminals Corp. approval to locate in majority-white District, while attempting to steer it to majority-Black District); ROA.680-683 [¶¶316-329] (in 2014, Parish aggressively enforced land use regulation against Petroplex, which sought to locate in majority-white area of the Parish, and issued a stop-work order, which ultimately ended the project); ROA.683-686 [¶¶330-341] (in 2022, Parish imposed moratorium on solar farms at request of white residents).

### 4.   Continuing Violations: The Parish's Enforcement of the Discriminatory Pattern and Practice Since March 21, 2022, Within the Limitations Period for Claims I-IV

Since March 21, 2022, the Parish has taken several actions that reveal its continued enforcement of its discriminatory land use pattern and practice, acceding

to white residents' concerns about facilities that would not even emit air pollution while ignoring similar pleas from Black residents about facilities that would increase the toxic load on their communities.

In 2021, solar power companies proposed two solar power farms in St. James Parish's Sixth District, near the majority-white South Vacherie community. ROA.683 [¶330]. The Parish Council engaged in extended debates on the benefits and drawbacks of the solar power proposals, heeding residents' concerns about potential aesthetic effects and impacts on property values from solar development. ROA.684-685 [¶¶331-341]. On August 17, 2022, the Parish passed a resolution amending the Land Use Plan to include a moratorium on commercial solar facilities, barring their approval until the Parish-commissioned economic and environmental impact studies were completed. ROA.684-685 [¶¶334-335]. That same day, RISE members renewed their longstanding request that the Parish consider a similar moratorium on heavy industry in the Parish because of comparable concerns, which the Parish ignored. ROA.685 [¶¶338-340].

Finally, even since the filing of Plaintiffs' Amended Complaint, the Parish has approved two additional land use proposals that conflict with the Plan and will primarily impact the Fifth District: Koch Methanol and Acadian Gas Pipeline

("Acadian Gas").[1] On July 31, 2023, the Parish Planning Commission approved an

application by Koch Methanol, which is within 2.7 miles of Mount Triumph

(ROA.700 [¶410]), to expand its operations in the Fifth District within 2 miles of

St. Paul Baptist Church, into an area designated as wetlands, and not for industrial

use.[2] And on October 11, 2023, the Council approved a land use request by

Acadian Gas to construct a new pipeline in the Fifth District, a portion of which

would be in an area designated as "Residential Growth," and also not intended for

industrial use.[3]

---

[1]     Plaintiffs ask this Court to take judicial notice of Exhibits 1, 2, and 3. These are meeting minutes and resolutions approved by the Parish and were obtained from the Parish's website at www.stjamesla.com/agendacenter. "In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343, n.6 (5th Cir. 1994). "An appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court." *United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001). A court can take judicial notice of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.*

[2]     Proceedings of the Planning Commission, Parish of St. James, State of Louisiana, *A Resolution Approving the Application of Koch Methanol, St. James, LLC Under the St. James Parish Land Use Ordinance, with Conditions* (Item # 23-25) (Jul 31, 2023), available at https://www.stjamesla.com/AgendaCenter/ViewFile/Agenda/_08282023-445 ("the ethane pipeline connection depicted in the Application . . . located [in] an area designated as Wetlands in the land use plan") (hereinafter "Koch Methanol Planning Commission Resolution"), annexed hereto as Exhibit 1. On September 27, the Parish Council denied an appeal of that decision submitted by Plaintiffs in this case. *See* Official Proceedings of the Council of the Parish of St. James, State of Louisiana, at 3-4 (Sept. 27, 2023), available at https://www.stjamesla.com/AgendaCenter/ViewFile/Minutes/_09272023-451, annexed hereto as Exhibit 2.

[3]     Official Proceedings of the Council of the Parish of St. James, State of Louisiana, Resolution 23-212, *A Resolution Approving the Application of Acadian Pipeline to Allow Installation Of A 20-Inch Diameter Pipeline to Koch Methanol, Which Consists of 7,412 Feet of New Pipe from the Existing Acadian's Pipeline, Use in A Residential Growth Area 5883 St. Emma Street, St. James, Louisiana (Item #23-27) Under the St. James Parish Land Use Ordinance, with Conditions* (Oct 11, 2023), available at

### 5.    The Parish's Land Use Decisions Since March 21, 2019 That Discriminate Against Baptist Churches

Relevant to the RLUIPA nondiscrimination claim, three siting decisions have impacted Baptist churches in majority-Black districts, within the applicable four-year limitations period. First, in May 2019 the Parish approved Wanhua's land use permit, which is located one mile from historic Romeville and Pleasant Hill Baptist Church. ROA.692-694 [¶¶374-385]. Second, also in May 2019, the Parish approved Syngas' proposal to build a methanol production plant within two miles of Burton Lane Church, and near Mount Triumph. ROA.702 [¶¶419-423]. And third, the Parish's approval on July 31, 2023 of Koch Methanol's application to expand its operations allowed for the construction of a pipeline within two miles of St. Paul Baptist Church. ROA.671-674 [¶¶281, 288]. As noted in the Complaint, Koch Methanol is within 2.7 miles of Mount Triumph. ROA.700 [¶410].

### 6.    The Parish's Land Use Decisions that Harm Ancestral Burial Grounds

The Parish's siting decisions have also destroyed cemeteries of Plaintiffs' enslaved ancestors, and have inhibited Plaintiffs' ability to worship upon those cemeteries. ROA.738-741 [¶¶585-587, 607]. Portions of the backlots of many plantations doubled as unmarked burial sites for people enslaved there. ROA.713

---

https://www.stjamesla.com/AgendaCenter/ViewFile/Minutes/_10112023-453 (hereinafter "Acadian Pipeline Resolution"), annexed hereto as Exhibit 3.

[¶¶477-479]. Because of the Parish's approval of industrial facilities, some of these burial sites have been desecrated or altogether destroyed by industrial construction and development, including at the sites of the Rain CII calcined coke plant and Mosaic Faustina fertilizer plant. ROA.718-721 [¶¶494-507].

Other cemeteries are under threat because of the land use approvals granted by the Parish. For instance, on January 24, 2019, the Parish Council approved a land use application permit submitted by Formosa Plastics ("Formosa") which proposed a 2,400-acre chemical manufacturing complex located atop the former Acadia and Buena Vista Plantations. ROA.696-697 [¶¶391, 397]. In November 2019, Plaintiffs discovered that there were at least two cemeteries of enslaved people located on the proposed Formosa site, one of which already had a pipeline constructed through it. ROA.723-724 [¶¶515-522]. Formosa threatened to disinter those buried in the cemeteries if necessary to develop its facility. ROA.723-734 [¶¶518-520].

The public records revealed that Formosa knew about the existence of the cemeteries while its land use application was pending; however, that information was not disclosed to the Parish. ROA.725 [¶525]. Plaintiffs subsequently learned that there were between one and five additional cemeteries on the Formosa site that it had not yet investigated. ROA.725 [¶527]. RISE repeatedly requested the Parish to rescind the land use approval because of the withholding of this information and

14

the significance of these burial grounds. ROA.403-408 [¶¶509, 528-530]. The

Parish declined, without even responding to the request. ROA.726 [¶¶531-532].

Similarly, the Parish approved the siting of South Louisiana Methanol's

petrochemical complex, which would rest on the site of several former Plantations.

ROA.727 [¶538]. In May 2019, a cultural resource survey of the area confirmed

the existence of "intact, buried cultural features" and the likelihood of "additional

intact remains" on the land, but no further archaeological studies have been

conducted. ROA.727 [¶539].

## C. Proceedings Below

Plaintiffs filed this case in the Eastern District of Louisiana on March 21,

2023 against Defendants St. James Planning Commission, St. James Parish

Council, and St. James Parish ("Defendants")[4], alleging seven claims for violation

of their constitutional and civil rights under the United States and Louisiana state

constitutions, as well as federal statute.

Specifically, Plaintiffs allege that the Parish's pattern and practice of

discriminatory land use acts as a badge or incident of slavery in violation of the

Thirteenth Amendment (U.S. Const. amend XIII), ROA.731-733 [¶¶552-561];

---

[4]     In its ruling on Defendants' motion to dismiss, the district court dismissed both the St. James Parish Council and St. James Parish Planning Commission from the present action, reasoning that neither the Council nor Commission had capacity to sue or be sued. ROA.1019. Plaintiffs do not appeal this decision.

violates the Equal Protection Clause of the Fourteenth Amendment (U.S. Const. amend. XIV, § 1), ROA.733-735 [¶¶562-569]; violates Plaintiffs' right to bodily safety and integrity under the Fourteenth Amendment (U.S. Const. amend. XIV, § 1), ROA.735-736 [¶¶570-576], in violation of 42 U.S.C. § 1983; discriminatorily harms Plaintiffs' property rights in violation of 42 U.S.C. § 1982, ROA.736-737 [¶¶577-583]; places a substantial burden on the exercise of religion in violation of RLUIPA, ROA.738-739 [¶¶584-590]; violates RLUIPA's mandate of non-discrimination, ROA.739-741 [¶591-604]; and last, violates Plaintiffs' right, under La. Const. Art. XII, Sec. 4, to preserve, foster, and promote their historic and cultural origins. ROA.741-742 [¶¶605-612]. Plaintiffs seek declaratory and injunctive relief for these claims. ROA.742-746 [¶¶A-G].

On July 7, 2023, Plaintiffs filed their First Amended Complaint ("Complaint") as of right under Fed. R. Civ. P. 15(a)(1)(B). ROA.276. On July 19, Defendants submitted a motion to strike allegations and dismiss claims pursuant to Fed R. Civ. P. 12(f), 12(b)(1), and 12(b)(6) and for an award of fees and costs pursuant 42 U.S.C. §1988 claims. ROA.752. Plaintiffs submitted their opposition to Defendants' motions on August 14, 2023, ROA.881, to which Defendants replied on August 21, 2023.[5] ROA.934.

---

[5]    On August 29, 2023, district court Judge Wendy B. Vitter recused herself from this matter following discovery that her husband was of counsel at the law firm which represented

Defendants then filed a motion for stay of discovery and/or the issuance of a protective order pursuant to Fed. R. Civ. P. 26(c) on November 8, 2023. ROA.973, 975. Oral argument on that motion was set for December 13, 2023. ROA.987. Before oral argument could be heard, the district court denied Defendants' motion to strike pursuant and granted their motion to dismiss. ROA.1033.

## D. The District Court's Decision

On November 16, 2023, while the district court acknowledged that Plaintiffs had standing for some claims based on "continuing harm and threatened future harm" (ROA.1013), it dismissed all of Plaintiffs' claims with prejudice. It dismissed Claims I-IV and VI under 12(b)(6), and Claims V and VII under 12(b)(1). First, the court addressed Claims I-IV (Thirteenth Amendment, Equal Protection, Bodily Integrity, and 42 U.S.C. §1982) and erroneously ruled that those claims were untimely because they were not predicated on a pattern and practice—or a continuing violation—as alleged and argued by Plaintiffs but rather on a discrete act. ROA.1030, 1032. It reasoned that, although Plaintiffs' claims "may appear to include continuing violations[,]" they were "at their core . . . based on one discrete action by Defendants: the adoption in 2014 of the Land Use Plan." ROA.1029. As such, it concluded that "Plaintiffs' claims accrued when the Parish

---

the Parish in developing the 2014 Land Use Plan. ROA.964-965. District court Judge Carl J. Barbier then began presiding over the matter. ROA.973.

adopted the Land Use Plan and Plaintiffs learned of the changes: in 2014."
ROA.1030. It applied the same erroneous reasoning to dismiss Claim VI (RLUIPA
Nondiscrimination) as untimely. ROA.1031-1032.

The district court erroneously dismissed the remaining two claims—Claims
V (RLUIPA Substantial Burden) and VII (Louisiana Constitution Art. XII)—on
the basis that Plaintiffs had not sufficiently alleged religious injury standing,
reasoning that the destruction of cemeteries where Plaintiffs' ancestors are buried
is not fairly traceable to the Parish. ROA.1020. The court did not consider other
standing grounds for these claims.

The court made two additional erroneous rulings, but did not dismiss any
Plaintiffs or claims based on those errors. First, it ruled that while Inclusive
Louisiana showed standing based on property injuries, neither Mount Triumph nor
RISE had such an injury, which remains germane to Plaintiffs' claims. ROA.1009.
Second, it ruled that no Plaintiff had sufficiently alleged stigmatic harm standing as
a result of unequal treatment by the Parish. ROA.1005.

## SUMMARY OF THE ARGUMENT

In dismissing Plaintiffs' well-pled claims of racial and religious
discrimination, the district court failed to view the Complaint's allegations in a
light most favorable to plaintiffs. *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d
170, 174 (5th Cir. 2016). The court misconstrued Plaintiffs' pattern-and-practice

claims in a ruling that shields invidious and ongoing discrimination against legal challenge–a result the Supreme Court has refused to allow. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982). The court also overlooked detailed factual allegations as to Plaintiffs' standing to dismiss their claims under RLUIPA (Substantial Burden) and the Louisiana Constitution, and to deny that other harms provide additional bases of standing supporting all of their claims.

1.     The Court should reverse the district court's dismissal of Plaintiffs' Thirteenth Amendment, Equal Protection, 42 U.S. Code § 1982, and Substantive Due Process claims on statute-of-limitation grounds. These claims challenge the Parish's pattern, practice, and policy of discriminatory land use decisions, which constitute a continuing violation, and which continue into the one-year limitations period. *Havens Realty Corp.*, 455 U.S. at 380-81. The district court miscast Plaintiffs' theory of liability as one that challenged only a discrete act rather than a long-standing pattern and practice, attaching outsized significance to the Parish's enactment of the Land Use Plan in 2014. ROA.1029. While the Plan is relevant as evidence of the Parish's long-standing discriminatory pattern and practice, it is not the sole basis of any of these claims and harms.

The court's subsequent errors flowed from this flawed characterization: it dismissed these claims, ruling that they were untimely because they were not brought within a year of Plaintiffs being on notice of the enactment of the Land

Use Plan. ROA.1029-1031. But the Supreme Court has been clear that no such notice restriction applies when a plaintiff challenges a continuing violation predicated on a pattern and practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Where, as here, Plaintiffs have identified a long-standing pattern and practice and have plausibly alleged that the pattern extends to acts within the limitations period–here through two acts on August 17, 2022, and two more acts since the filing of Plaintiffs' Amended Complaint–the statute of limitations cannot bar Plaintiffs' claims.

2.     The Court should reverse the district court's dismissal of Mount Triumph's nondiscrimination claim under RLUIPA, 42 U.S.C. § 2000cc(b)(2), as barred by the applicable four-year limitations period. 28 U.S.C. § 1658(a). This claim challenges the imposition or implementation of a land use regulation in a manner that discriminates against predominantly Black Baptist churches, including Mount Triumph, by applying industrial buffer zones to protect Catholic churches in the majority-white parts of the Parish, but not Baptist churches in the majority-Black parts of the parish. The court incorrectly applied the same flawed statute of limitations analysis to this claim as it did to Plaintiffs' other claims, tying them to the date of passage of the Land Use Plan, ROA.1031-1032. This was error as Plaintiffs clearly allege two land use decisions made by the Parish after March 21, 2019 that were in violation of the RLUIPA nondiscrimination provision, i.e.

20

decisions that implemented a land use regulation in a discriminatory manner, and the Parish has made one additional land use decision that violates the RLUIPA nondiscrimination provision since the filing of Plaintiffs' Complaint.

3.      The Court should also reverse the district court's dismissal of Plaintiffs' claims under RLUIPA's substantial burden provision, 42 U.S.C. § 2000cc(a), and Art. XII, Sec. 4 of the Louisiana Constitution, as it applied a flawed and cramped standing analysis. These claims challenge the Parish's approval of industrial facilities upon sites of historic, cultural, and religious significance to Plaintiffs, including sacred cemeteries of their enslaved ancestors. The district court incorrectly ruled that the religious injury to Plaintiffs was not traceable to the Parish because independent, private parties restricted access to the cemeteries. ROA.1014-1015. But Plaintiffs' claim is not based on access restrictions; it is rather a challenge to the Parish's decision, as a regulating authority, to permit the construction of industrial facilities upon the cemeteries, which have destroyed and threaten to continue to destroy them; this is sufficient to satisfy the relatively modest burden to show traceability at the pleading stage.

4.      Further, the court failed to assess whether other injuries to Plaintiffs— including harms to the historic and aesthetic value of the area—were sufficient to confer standing for Plaintiffs' Louisiana Constitution Art. XII claim. Had it

assessed this injury, it would have had to conclude that it independently conferred standing for this claim.

5.      Finally, the district court summarily and incorrectly ruled that two out of three Plaintiffs did not have standing based on property injury, and that all Plaintiffs did not have standing based on stigmatic harm injury. ROA.1004-1005, 1008-1009. These rulings were in error and should be reversed, although they did not result in the dismissal of any Plaintiffs or claims.

## <u>ARGUMENT</u>

### I.   STANDARD OF REVIEW

Appellate courts review 12(b)(6) dismissals on statute of limitations grounds *de novo*. *See Riddle v. Dyncorp Int'l Inc.*, 666 F.3d 940, 942 (5th Cir. 2012). Appellate courts also review Rule 12(b)(1) dismissals for lack of standing *de novo*. *Sierra Club v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 555 (5th Cir. 1996). In ruling on a motion to dismiss, courts accept plaintiffs' "well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Barrie*, 819 F.3d at 174. *See also Haverkamp v. Linthicum*, 6 F.4th 662, 668–69 (5th Cir. 2021) ("[A]ll reasonable inferences must be made in the plaintiff's favor."). Motions to dismiss "'[are] viewed with disfavor and [are] rarely granted.'" *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (internal quotations omitted).

## II.     THE DISTRICT COURT ERRED IN DISMISSING CLAIMS I-IV AND VI AS UNTIMELY: CLAIMS I-IV ARE BASED ON CONTINUING VIOLATIONS CARRYING INTO THE LIMITATIONS PERIOD AND CLAIM VI IS BASED ON UNLAWFUL ACTS THAT OCCURRED WELL WITHIN THE LIMITATIONS PERIOD.

In dismissing Claims I (Thirteenth Amendment), II (Equal Protection), III (Bodily Integrity), and IV (42 U.S.C. § 1982), on statute of limitations grounds, the district court erroneously concluded that the claims were "at their core . . . based on one discrete action by the Defendants: the adoption in 2014 of the Land Use Plan." ROA.1029. This is a significant mischaracterization of those claims, which do not challenge any isolated, discrete act such as the Plan by itself. Rather, they challenge the Parish's unlawful pattern, practice, and policy of discriminatory steering that began long before the Plan was adopted (ROA.731-36 [¶¶554, 564, 572, 579]), and that has continued into the limitations period, which began on March 21, 2022 for those claims, as revealed by two specific discriminatory actions by the Parish on August 17, 2022 (ROA.683-685, ¶¶330-341), and two additional actions in 2023 since the filing of Plaintiffs' Amended Complaint (*supra* note 1-3). The court's error is magnified by its recognition that Plaintiffs' claims were based on actions that "appear to include continuing violations," ROA.1029, and its separate conclusion that Plaintiffs' had standing to bring these claims for what it described as "a continuing and threatened future injury." ROA.1013.

Put another way, the court's fundamental error was to single out one moment on a much longer timeline of wrongful actions and to tie all of Plaintiffs' harms to that singular event. But this moment—the 2014 Plan—while obviously relevant to the broader historical pattern and practice, is not itself necessary to Plaintiffs' claims; it is simply further evidence of a longstanding pattern and practice to which the Parish has been committed. The continued enforcement of that pattern and practice through actions that occurred well into the limitations period renders Plaintiffs' claims timely.

Likewise, the court's ruling dismissing Plaintiffs' Claim VI (RLUIPA Nondiscrimination) untimely was erroneous as Plaintiffs brought this claim well within the four-year limitations period applicable to such claims pursuant to 28 U.S.C. §1658(a). The statute of limitations for this claim began on March 21, 2019, after which time the Parish undertook at least two land use decisions (both in May 2019) under the Land Use Plan, that violate RLUIPA's nondiscrimination provision, and one additional decision since the filing of Plaintiffs' Complaint.

### A. Claims I-IV Are Timely Because They Are Based on a Longstanding Discriminatory Pattern, Practice, and Policy That Has Continued Into The One-Year Limitations Period.

#### 1. The Continuing Violations Doctrine

Under the continuing violations doctrine, courts should not dismiss a claim on statute of limitations grounds if it is premised, as Plaintiffs' claims are, on a

historical pattern and practice of unlawful conduct, even if the conduct began prior

to the limitations period, "as long as . . . at least one act which comprises the . . .

claim is still timely." *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech.

Coll.*, 850 F.3d 731, 736 (5th Cir. 2017), *as revised* (Mar. 13, 2017) (citation

omitted). The critical question under the continuing violations doctrine is whether

a claim is based on an "unlawful practice" that "manifested in a number of

incidents," *Havens Realty Corp.*, 455 U.S. at 381, rather than being based on

"discrete acts," *Heath*, 850 F.3d at 740. If the claim is based on a pattern and

practice, or in other words if it is based "on the cumulative effect of a thousand

cuts," *id*. at 737 (citation omitted), then the continuing violations doctrine applies.

The Fifth Circuit has applied the continuing violations doctrine to § 1983 claims.

*See, e.g.*, *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 734 (5th Cir. 1983) (§ 1983

equal protection claim); *Boswell v. Claiborne Par. Det. Ctr.*, 629 Fed. App'x 580,

583 (5th Cir. 2015) (§ 1983 medical care-related claim).

The Fifth Circuit has held that if the "violation occurs as a result of a

continuing policy, itself illegal, then the statute does not foreclose an action aimed

at . . . enforcement of the policy within the limitations period." *Perez*, 706 F.2d at

734. This reflects the law in other circuits, where courts have held that a defendant

cannot be insulated from liability simply because it began an unconstitutional

policy, practice, or pattern before the limitations period, if it has enforced it within

the limitations period. *See Katz v. Vill. of Beverly Hills*, 677 F. App'x 232, 236 (6th Cir. 2017) ("A plaintiff can establish a continuing violation if he or she shows a longstanding and demonstrable policy of discrimination.") (internal quotations omitted); *Virginia Hosp. Ass'n v. Balile*s, 868 F.2d 653, 663 (4th Cir. 1989) ("[t]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations") (citation omitted), *aff'd sub nom. Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, (1990).

Indeed, Plaintiffs' claims are akin to challenges to unconstitutional patterns and practices that courts routinely review as continuing violations, some of which the district court identified but failed to compare with Plaintiffs' case. ROA.1023 (describing *United States v. City of Parma* and *Boswell v. Claiborne Par. Det. Ctr.*).

For example, in *Havens Realty Corp.*, the plaintiffs alleged that defendants were engaging in a "continuing pattern, practice, and policy of unlawful racial steering" which "has deprived them of the benefits of interracial association arising from living in an integrated neighborhood[,]" in violation of the Fair Housing Act. 455 U.S. at 381. Four out of five relevant incidents of discrimination occurred prior to the limitations period. *Id*. at 368. The Supreme Court held that the plaintiffs' claims were timely because they were "based not solely on isolated incidents . . . but a continuing violation manifested in a number of incidents—

including at least one . . . that is asserted to have occurred within the [limitations] period." *Id* at 381.

Similarly, in *United States v. City of Parma*, the Sixth Circuit held that the continuing violations doctrine applied to discriminatory housing claims against the City for a series of actions that were a part of a pattern and practice that resulted in a "virtually all-white community." 661 F.2d 562, 567, 575 (6th Cir. 1981). The City argued, as the Parish did in this case, that the claims were time-barred because plaintiffs alleged that the City discriminatorily passed a zoning ordinance and rejected a building permit prior to the limitations period. *Id*. But unlike the district court in this case, the Sixth Circuit found those two land use decisions were just one "part of 'a pattern or practice of resistance to the full enjoyment' of rights" under the Fair Housing Act, and plaintiffs' claims were timely. *Id*. at 576.

As another example, a number of district courts have applied the continuing violations doctrine to claims alleging discrimination in the provision of municipal services. In *Kennedy v. City of Zanesville*, plaintiffs brought discrimination claims alleging a pattern and practice of denial of public water services to an African-American neighborhood. 505 F. Supp. 2d 456, 463 (S.D. Ohio 2007). Although the claims were only filed decades after defendants began this pattern and practice, the court held that they were based on a continuing violation and timely because they were "not alleging one request and denial, but rather a pattern of requests and

denials, all while Defendants treated white residents differently." *Id*. at 491. *See also Banks v. McInstosh Cnty.*, No. 2:16-CV-53, 2022 WL 400810, at *6-11 (S.D. Ga. Feb. 9, 2022) (doctrine applied to plaintiffs' discrimination claims against the County for inferior municipal services, although discriminatory treatment began before limitations period).

As a final example, in *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U*, plaintiffs brought a § 1983 claim alleging that the school system had discriminatorily closed a school in a majority-Black village, University Park, and decided to bus Black students to majority-white communities. 46 F.3d 682, 683 (7th Cir. 1995). Plaintiffs—a class of Black parents and schoolchildren living in University Park—filed the suit after the limitations period. *Id*. Defendants sought to dismiss the claims as untimely. The Seventh Circuit framed the question as "whether the suits that produced *Brown v. Board of Education* . . . should have been dismissed as untimely rather than decided on the merits." *Id.* at 683. It answered: "the fact that [a defendant] has been violating the Constitution for a generation does not permit it to commit fresh violations." *Id*. at 686. It concluded,

> if. . . the school board's explanation for closing [the school] is a pretext for discrimination, then each year's decision to leave the building shuttered is a new violation—as is each assignment plan that compels black pupils to board busses for a distant junior high school that they would not be required to attend if the population of University Park had a lighter complexion.

*Id.*

Like each of these examples, Plaintiffs in this case challenge a

discriminatory pattern and practice that began decades ago and continues through

to today. ROA.731-736 [¶¶554, 564, 572, 579]. It is true that the Parish codified

this practice in a Land Use Plan, but that cannot shield it from liability, given that

the codification was merely a part of a prior and subsequent pattern and practice.

Otherwise, any government entity seeking to continue an unconstitutional pattern

or practice would simply codify it into legislation, and if not challenged within a

year, it could be enforced indefinitely. This would "improperly transform the

limitations statute from one of repose to one of continued immunity . . . ." *Poster*

*Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 127–28 (5th Cir. 1975).

> **2. Plaintiffs' Claims I-IV Are Based on a Longstanding Pattern, Practice, and Policy Which Has Been Continuously Enforced By the Parish Through Several Acts Within the One-Year Limitations Period.**

Plaintiffs' Thirteenth Amendment claim is based on an unlawful pattern and

practice. ROA.598 [¶4]; ROA.686 [¶347]; ROA.732 [¶556]. And as the district

court noted, Plaintiffs' Equal Protection and Substantive Due Process claims

(Claims II and III), as well as their claim brought under 42 U.S.C. § 1982 (Claim

IV), are based on the same actions by the Parish as those pled with respect to their

Thirteenth Amendment claim. ROA.1030-1031. This discriminatory pattern and

practice has *cumulatively* caused health, environmental, property, aesthetic,

religious, and stigmatic injuries to Plaintiffs. Indeed, the district court recognized

that Plaintiffs' claims were based on actions that "appear to include continuing violations . . .: similar decisions and actions allowing industrial development in specific locations, occurring relatively frequently, perpetrated by the same Defendants, without intervening acts by Defendants to sever the continuing nature of the acts." ROA.1029.

Yet the court made an illogical and erroneous leap from these findings to conclude that Plaintiffs' claims were "at their core . . . based on one discrete action by the Defendants: the adoption in 2014 of the Land Use Plan." *Id*. The court did not explain why it attached such significance to this moment in time when it dismissed those claims as barred by the one-year limitation period applicable to § 1983 claims, as the Land Use Plan is only one example of many acts that constitute the discriminatory pattern and practice of which Plaintiffs complain. Many of the discriminatory acts Plaintiffs alleged occurred before the Plan's enactment. ROA.646-666 [¶¶181-259] (describing polluting industry steered into Fourth and Fifth districts prior to 2014). And, critically, Plaintiffs have alleged at least two decisions within the limitations period that were made independent of the Land Use Plan, but still form part of the discriminatory pattern and practice: (i) the decision on August 17, 2022, to reject Plaintiffs' request for a moratorium on polluting industry in their majority-Black communities, and (ii) the simultaneous

grant of white residents' request for a moratorium on solar industry. ROA.683-686 [¶¶330-341]. Neither request was made under, or contemplated by, the Plan.

Additionally, since the filing of Plaintiffs' Amended Complaint, the Parish has made at least two industrial land use decisions in the majority-Black Fifth District in areas that conflict with the plan, revealing that the Parish's discriminatory pattern and practice has not been confined even to that codified in the Plan. Because these actions continue the historical pattern of discriminatory land-use decisions, they further extend the limitations period.[6] On July 31, 2023, three weeks after Plaintiffs filed their Amended Complaint, the Planning Commission approved Koch Methanol's land use application for industrial expansion into a wetlands area where industrial uses are not allowed.[7] And on October 11, 2023, the Parish Council approved a land use request by Acadian Gas to construct a new pipeline in the Fifth District, including in an area designated as "residential growth."[8] In fact, these two decisions are part of a pattern since enactment of the Land Use Plan in which the Parish has exceeded the Plan's bounds to approve facilities seeking to locate in the majority-Black Fourth and Fifth districts. *See, e.g.,* ROA.700 [¶¶410-413] (2015 approval by Planning

---

[6]     As noted above, Plaintiffs ask this court to take judicial notice of Exhibits 1, 2, and 3. *See supra* notes 1-3.

[7]     *See supra* note 2, Koch Methanol Planning Commission Resolution (Ex. 1).

[8]     *See supra* note 3, Acadian Pipeline Parish Council Resolution (Ex. 3).

Commission, instead of Council, of Yuhuang Chemical in an area designated for residential growth, where industrial use is not allowed); ROA.701 [¶¶417-418] (2018 approval of Ergon expansion in an area designated for agricultural use, where industrial use is not allowed).[9]

This reveals that while the Land Use Plan is *relevant* to Plaintiffs' claims as additional evidence of discrimination, it is not *necessary*, nor their sole basis: because the Parish's discriminatory pattern and practice extends beyond even that permitted by the Land Use Plan, Plaintiffs' claims would not be resolved by its invalidation alone. The district court even acknowledged that Plaintiffs' case does not turn on the validity of the Plan as such. ROA.1009-1010 ("Plaintiffs note that any remedy imposed by this court need not be limited to invalidating the plan . . . . Plaintiffs seek numerous forms of injunctive and declaratory relief . . . ."). Instead, a resolution of Plaintiffs' claim requires, for example, a declaration that the Parish's "policies, practices, and/or customs pertaining to the discriminatory land use system and, in particular, the discriminatory siting of industrial facilities, violates the [United States and Louisiana Constitutions, and RLUIPA]," ROA.742 [¶A], and an injunction prohibiting "all policies, pattern and practices, and/or

---

[9]     This is in contrast to the Parish's strict and aggressive adherence to and enforcement of the requirements of the Land Use Plan for facilities that have sought to locate near majority-white parts of the Parish. ROA.678-686 [¶¶305-341].

customs pertaining to the racially and religiously discriminatory land use system." ROA.743 [¶D(ii)].

Contrary to what the district court reasoned, each of the acts that Plaintiffs allege not only "continu[ed the] effect" of any prior act (ROA.1029), they are new acts that produced additional health, environmental, aesthetic, religious, and stigmatic harms that cumulatively form the basis of Plaintiffs' claims. This is comparable to the employment law context: an employee may bring a claim that a discrete act was itself unlawful, for example for being retaliatory (where the continuing violations doctrine would not apply), and/or they may bring a claim that the act contributed, cumulatively with other acts, towards a hostile work environment which is separately unlawful (where the continuing violations doctrine would apply). *See, e.g.*, *Heath*, 850 F.3d at 739, 741 (while some of the alleged acts that gave rise to plaintiffs' Title VII and § 1983 hostile work environment claims were the same as those that gave rise to the Title VII retaliation claims, the former claims were timely as a continuing violation, while the latter claims were time-barred as discrete acts).

Moreover, the history of the Parish's actions is relevant to assessing the substantive merits of Plaintiffs' claims. For example, "historical background," including "legislative or administrative history," is relevant to a court's assessment of whether a government policy is unconstitutionally discriminatory against a

protected class in violation of the equal protection clause. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977). It would undermine the law's anti-discrimination protections to require Plaintiffs to wait to compile a historical record of discriminatory official actions, only to then dismiss the claim as untimely. Similarly, courts, including the Fifth Circuit, have applied the continuing violations doctrine to claims that require plaintiffs to show a history of deliberate indifference—as is required for claims based on violations of the Substantive Due Process Clause. *See, e.g.*, *Boswell*, 629 Fed. App'x at 583 (doctrine applied to incarcerated plaintiff's § 1983 claim that prison continued to fail "to provide needed and requested medical attention" for hernia); *Jervis v. Mitcheff*, 258 F. App'x 3, 5–6 (7th Cir. 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released"); *Silva v. Baptist Health S. Fla.*, Inc., 856 F.3d 824, 841-42 n.16 (11th Cir. 2017) (plaintiffs' hospital visits prior to the limitations period may be considered where evidence of past discrimination is relied upon to establish current deliberate indifference; and when plaintiffs challenge under the ADA the defendant hospital's policies, which are part of an ongoing violation that continued into the limitations period).

### 3. The District Court Erred by Applying a Notice Limitation to Plaintiffs' Claim, Which Has Been Rejected by the Supreme Court.

After misconstruing Plaintiffs' claim as being based on a discrete act rather than a pattern and practice, the district court improperly determined that it should apply a notice limitation to Plaintiffs' claims. ROA.1030. But this limitation does not apply to continuing violations based on a pattern and practice. The court listed nineteen of the numerous acts that Plaintiffs allege constituted part of the discriminatory pattern and practice, and concluded first that "Plaintiffs' claims accrued when the Parish adopted the Land Use Plan and Plaintiffs learned of the changes: in 2014" and then, contradicting itself, that "zoning events that occurred prior to the 2014 plan, while related to Defendants' subsequent decisions, are discrete actions that put Plaintiffs on notice to protect their rights, thereby starting the clock on prescription[.]" ROA.1029-1030. It remains unclear to Plaintiffs which of the nineteen acts listed by the court would have started the clock on Plaintiffs' *pattern and practice* claim, which is what is at issue here: was it a 1966 decision to site one of the first polluting facilities in a historically and predominantly Black community in the Fourth District? Or a later decision in 1981 to site another facility in that same community? Or a 2022 decision to refuse to impose a moratorium on polluting industry in that community?

That is precisely why this "notice" requirement has been rejected in evaluating claims, like Plaintiffs', that are continuing violations. *Morgan*, 536 U.S. at 117 ("we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct."). Indeed, the Fifth Circuit has recognized that "*Morgan* overruled our prior cases to the extent they held that the continuing violation doctrine does not apply when [a plaintiff] was or should have been aware earlier of a duty to assert her rights." *Heath*, 850 F.3d at 739.

The district court based its conclusion that "Plaintiffs' § 1983 claims accrued when Plaintiffs became aware they suffered an injury or had sufficient information to know they were injured," (ROA.1025-1026), partially on this Court's decisions in *Texas v. United States*, 891 F.3d 553 (5th Cir. 2018) and *McGregor v. Louisiana State Univ. Bd. Of Supervisors*, 3 F.3d 850 (5th Cir. 1993) (ROA.1024-1025). Neither of those cases applies here. *Texas* was a challenge, under the Waste Act, to the U.S. Department of Energy and other federal agencies' failure to accept Texas's nuclear waste by 1998, as required by the statute, and their subsequent failure to create a nuclear waste site in Nevada by 2012. This Court reasoned that the sole exception to the Waste Act's limitations period was—as written explicitly into the statute—if a party showed "that it was subjectively unaware of the

complained-of actions and that its lack of knowledge was objectively reasonable in the circumstances." *Texas*, 891 F.3d at 562. Additionally, this Court reasoned that "by its plain language, the Waste Act speaks of failures to act as discrete events, not as ongoing, durational conditions." *Id.* at 563–64. Thus, the doctrine of continuing violations was categorically unavailable for claims arising under the Waste Act. In contrast, here, the continuing violations doctrine is necessarily available for patterns and practices that violate § 1983. *Perez*, 706 F.2d at 734 (doctrine applied to § 1983 equal protection claim); *Boswell*, 629 Fed. App'x at 583 (doctrine applied to incarcerated plaintiff's § 1983 medical care-related claim).

*McGregor v. Louisiana State Univ. Bd. of Sup'rs* is similarly inapplicable. There, the plaintiff alleged that the law school he attended violated due process when it did not inform him of his right to appeal two decisions related to his time at the law school, which he alleged was part of a pattern and practice of due process failures; but a critical failure of his claim was that the last relevant act had occurred prior to the limitations period. 3 F.3d 850, 863, 867 (5th Cir. 1993). In contrast, Plaintiffs here have alleged acts that are part of the unconstitutional pattern and practice that fall within the limitations period: the Parish's two land use decisions on August 17, 2022 (ROA.683-686 [¶¶330-341]), and, as described above, the two approvals that occurred in July-October 2023, since the filing of Plaintiffs' Amended Complaint. *Supra* Part II(A)(2); *supra* notes 1-3.

**B. Claim VI: Plaintiffs' RLUIPA Nondiscrimination Claim Is Also Timely Because the Parish Has Made Several Discriminatory Permitting Decisions Within The RLUIPA Four-Year Limitations Period.**

The district court also erred when it dismissed Mount Triumph's RLUIPA nondiscrimination claim on a similarly flawed statute of limitations analysis. RLUIPA claims, pursuant to 28 U.S.C. § 1658(a), have a four-year statute of limitations. *Jones v. Lumpkin*, No. 21-20106, 2023 WL 3075063, at *2 n.2 (5th Cir. Apr. 25, 2023). Since the start of the RLUIPA limitations period, March 21, 2019, the Parish has made several land use decisions that form the basis of Mount Triumph's RLUIPA nondiscrimination claim.

Under the RLUIPA nondiscrimination provision, "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). In Claim VI, Mount Triumph asserts that the Parish's imposition and implementation of the Land Use Plan unlawfully discriminates against Baptist churches in majority-Black districts. 42 U.S.C. § 2000cc(b)(2). Specifically, the Parish has applied industry buffer zones to protect Catholic churches located in majority-white areas of the Parish, and not to Baptist churches in majority-Black areas. ROA.739-741 [¶¶591-604]. The Plan enacted in 2014 included explicit buffer zones to shield only Catholic churches in majority-white districts from polluting industry. ROA.671 [¶¶280-281]. Although the facially discriminatory

buffer zones were omitted in the 2018 revisions, the Parish has continued to use those buffer zones by approving industrial facilities within two miles of majority-Black, Baptist churches, including Mount Triumph, while not doing the same for Catholic churches in majority-white districts. ROA.692-694 [¶¶375-385] (Wanhua); ROA.696-697 [¶¶393-397] (Formosa); ROA.701 [¶417] (Ergon); ROA.702 [¶¶422-423] (Syngas); ROA.740 [¶¶594-598].

Since March 21, 2019, the Parish has granted land use approvals that violate RLUIPA's nondiscrimination provision, which clearly render Plaintiffs' claim timely. First, On March 25, 2019, the Planning Commission approved Syngas Energy Holding, LLC's proposal to construct a methanol production facility in St. James Parish. ROA.702 [¶419]. Syngas is located within two miles of Burton Lane Church, a Baptist church in the Fifth District, and it is located near Mount Triumph. ROA.702 [¶423].

Second, on May 20, 2019, the Planning Commission approved a land use permit from Wanhua Chemical U.S. Operations. ROA.694 [¶385]. The proposed site was in the Fourth District in the town of Convent, located just one mile from Pleasant Hill Baptist Church ROA.692 [¶375].

And third, the Parish's approval on July 31, 2023 of Koch Methanol's application to expand its operations allowed for the construction of a pipeline within two miles of St. Paul Baptist Church. ROA.671-674 [¶¶281, 288]. As noted

39

in the Complaint, Koch Methanol is within 2.7 miles of Mount Triumph. ROA.700

[¶410].

### III. THE DISTRICT COURT ERRED BY: DISMISSING CLAIMS V AND VII FOR LACK OF STANDING; FINDING THAT PLAINTIFFS MOUNT TRIUMPH AND RISE HAD NOT SUFFICIENTLY PLED PROPERTY INJURIES; AND FINDING THAT PLAINTIFFS HAD NOT SUFFICIENTLY PLED STIGMATIC HARM.

While the district court ruled that Plaintiffs had standing for some claims

based on a "continuing injury or threatened future injury" (ROA.1013), it

dismissed Claims V (RLUIPA Substantial Burden) and VII (La. Constitution),

ruling that Plaintiffs had not sufficiently alleged standing for those claims. In so

doing, the court made several reversible errors.

First, the Court dismissed Claims V and VII, which are related to religious,

cultural, and aesthetic injuries from the Parish's actions allowing for the

desecration of ancestral burial grounds as well as other sites of cultural and historic

significance to Plaintiffs, on a conclusory finding that Plaintiffs cannot

demonstrate sufficient causation.[10] ROA.1015. But the court's summary

---

[10]    The district court dismissed RLUIPA Claim V (Substantial Burden) before discussing statute of limitations but could not have dismissed this claim on those grounds. RLUIPA claims have a four-year limitations period, 28 U.S.C. §1658(a), so the claim must have accrued on or after March 21, 2019. The discovery rule tolls the limitations period "whenever a plaintiff is not aware of and has no reasonable opportunity to discover the critical facts of his injury and its cause." *Dubose v. Kansas City S. Ry. Co.*, 729 F.2d 1026, 1030 (5th Cir. 1984). Plaintiffs discovered that the Parish's actions threatened to destroy the cemeteries on the Formosa site in and after November 2019 (ROA.723 [¶516]; ROA.725 [¶527]), and only discovered that the Parish's actions had destroyed or threaten to destroy other cemeteries after that date (ROA.719-

traceability analysis erroneously elevated the otherwise low bar to an improperly

heightened proximate cause requirement, ignoring numerous facts showing that the

Parish's actions have plausibly caused religious harms to Plaintiffs. It also ignored

independent injuries to Plaintiffs that would support standing for Claim VII

(Louisiana Constitution): injury to the historic, cultural, and aesthetic value of the

area.

Second, even though some of the Plaintiffs' injuries were sufficient to

support standing for Claims I-IV and RLUIPA Claim VI, the court erroneously

rejected an additional and independent basis to support those claims for two

Plaintiffs, namely the property injury to RISE and Mount Triumph. ROA.1008-

1009. Third, the court summarily rejected Plaintiffs' stigmatic injury as another

---

720 [¶¶498, 503]; ROA.727 [¶529]). Accordingly, Plaintiffs' claim accrued, at the earliest, in
November 2019 and is not time-barred.

    The district court also did not dismiss Claim VII under Louisiana Constitution XII Sec. 4
on statute of limitations grounds, nor could it have. It, too, is based on a continuing violation and
at least two acts that comprise the violation occurred after March 21, 2022. In any case,
Plaintiffs' state constitution claim does not have a prescriptive period under state law. Through
that claim, Plaintiffs seek to vindicate their rights to "preserve, foster, and promote their
respective historic . . . cultural origins," and seek only declaratory and injunctive relief. ROA.74
[¶607]. The Louisiana Supreme Court has noted that no prescriptive period exists when an action
seeks only injunctive relief and is "tailored to serve the best interest of the public and ensures
that any relief granted shall be issued in favor of the state." *State ex rel Tureau v. Bepco LP*, 351
So. 3d 297, 306 (La. 2022). If Plaintiffs prevail, the benefits of relief will accrue to the state and
its citizens. As a claim seeking solely injunctive relief to enforce the Louisiana Constitution's
provision for the protection of cultural origins, Plaintiffs' action fits within the *Tureau* exception.
Plaintiffs' claim is most akin to a petitory action under state law, which is "brought by a person
who claims the ownership of, but who does not have the right to possess, immovable property or
a real right therein . . . ." LSA-C.C. Art. 3651. Petitory actions have no liberative prescription
period. *See* LSA-C.C. Art. 3447 comment (b)."

additional and independent basis for standing, which is relevant to all of Plaintiffs' claims. ROA.1004-1005.

To establish standing, a plaintiff must show (1) injury-in-fact, (2) causation or traceability, and (3) redressability. *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 551 (1996). To establish causation, "the injury has to be fairly traceable to the challenged action of the defendant . . . ." *NAACP v. Tindell*, 90 F.4th 419, 422 (5th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The bar to prove traceability at the pleading stage is "relatively modest." *Bennett v. Spear,* 520 U.S. 154, 171 (1997); *see also DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (proving causation is "lower than the . . . showing required to prevail in a tort suit."). This requirement is satisfied where defendants "significantly contribute[ ] to Plaintiffs' alleged injuries," even if there are other contributors, because "[t]racing an injury is not the same as seeking its proximate cause . . . ." *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (citing *Bennett*, 520 U.S. at 168-69). In other words, Plaintiffs need not show that the Parish's "actions are the very last step in the chain of causation." *Bennett*, 520 U.S. at 169. Where a third party's actions contribute to the injury at issue, "causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction[.]" *Lujan*, 504 U.S. at 562. Causation is satisfied

42

when the injury results from "the predictable effect of Government action on the decisions of third parties," *Dep't of Com. v. New York*, 588 U.S. —, 139 S. Ct. 2551, 2566 (2019), or if an injury is "produced by determinative or coercive effect upon the action of someone else." *Bennett*, 520 U.S. at 169.

Plaintiffs may allege their members' injuries "generally"—they are not required to identify specific members' injuries for standing at the Rule 12(b)(1) stage. *See Texas Cable & Telecommunications Ass'n v. Hudson, 265 F. App'x 210, 216 (5th Cir. 2008).*

### A. The District Court Erred in Ruling that Plaintiffs Did Not Have Standing to Bring Claims V (RLUIPA Substantial Burden) and VII (Louisiana Constitution Art. XII).

In a number of their claims, Plaintiffs allege that the Parish's pattern, practice, and policy of approving heavy industry upon the cemeteries of enslaved people has injured Plaintiffs, who, as descendants of people once enslaved in the area, have deep religious and historic connections to, as well as a property interest in, these cemeteries. ROA.605-607, 738-742 [¶¶23-25, 586-587, 607-609]. The district court dismissed Claims V and VII, ruling that Plaintiffs had not shown that their religious injuries that formed the basis of these claims were traceable to the Parish. This ruling was erroneous for two reasons. First, the district court incorrectly assumed Plaintiffs' religious injuries stemmed exclusively from restrictions on access (ROA.1013-1014) which the court determined was

controlled by independent third parties, when in fact Plaintiffs' claim is based on the Parish's permitting of facilities that have, or will, destroy these cemeteries (ROA.728-729 [¶¶542-546]) (describing Plaintiffs' members' fear that cemeteries will be destroyed). And second, religious injuries are not the sole basis of Claim VII – Plaintiffs' historic and aesthetic injuries are also a basis for the Claim.

> **1. Plaintiffs' Religious Injuries Stem From the Current and Future Destruction of Ancestral Cemeteries Allowed by the Parish, Not From Third Parties' Restricting Plaintiffs' Access to Them.**

The district court incorrectly interpreted Plaintiffs' religious injury as being solely based on a restriction to *access* to the cemeteries of their enslaved ancestors, reasoning that "[i]n this case, private parties not made defendants in this case control whether Plaintiffs may access the cemeteries." ROA.1015. It accordingly held that "the religious injury Plaintiffs claim is the result of independent action by a third party not before the court, and thus the injury is not fairly traceable to Defendants' conduct." *Id*. But Plaintiffs' assertion is that by allowing for the construction of industrial facilities upon these cemeteries in the first place, the Parish has permitted their destruction and desecration, which itself is an injury (ROA.720-740 [¶¶, 501, 535-539, 542-546, 580, 598]), and which also hinders their ability to pray upon these cemeteries, which is a separate injury. ROA.725-740 [¶¶527, 538, 599].

These injuries are cognizable as a matter of law. The Louisiana Supreme Court has long held that:

> Regardless of the laws and rules relating to the ownership and control of real property, when a plot of ground is set apart for cemetery purposes, and burials are made in the land, the ground changes its character in the minds and feelings of the community. It assumes a sacred quality that overrides conveyancers' precedents and requires freedom from profanation . . .

*Humphreys v. Bennett Oil Corp.*, 195 La. 531, 551, 197 So. 222, 229 (1940) (citations omitted). Once dedicated, Louisiana law is clear that plaintiffs have standing to bring actions in damages for profanation of the cemetery, *id.* at 229, and for injunctive and declaratory relief against encroachment, *Locke v. Lester*, 78 So. 2d 14 (La. App. 2 Cir. 1955); *Riverie v. Mills*, 481 So. 2d 1050, 1051-52 (La. App. 1 Cir. 1985), and relatives, descendants, and friends have rights to access, visit, and care for the cemeteries. *Vidrine v. Vidrine*, 225 So. 2d 691, 696 (La. App. 3 Cir. 1969), *writ refused*, 254 La. 853, 227 So. 2d 594 (1969).

This reflects federal law, which recognizes that the threatened destruction of a historic site by proposed construction is sufficient injury to individuals who have a connection—religious, historic, or aesthetic—to that site. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) ("environmental plaintiffs adequately allege injury when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the

area will be lessened' by the challenged activity.") (internal quotations omitted); *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 779 (9th Cir. 2006) (plaintiffs satisfied injury requirement for National Environmental Policy Act claim where they alleged that they used affected area for cultural and religious ceremonies); *Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287, 1289 (4th Cir. 1992) (plaintiffs satisfied injury requirement where they alleged that construction of proposed sewer system would damage historic buildings and landscape); *Pye v. United States*, 269 F.3d 459, 468 (4th Cir. 2001) (adjacent property owners had cognizable injury where future development enabled by Army Corps of Engineers' permit for road improvement could indirectly result in destruction of historic sites, including African-American cemetery). Thus, both the actual or threatened destruction, as well as the inability to visit the cemeteries, are concrete injuries to Plaintiffs.

Further, these injuries are traceable to the Parish. Courts have found traceability where a plaintiff sues a regulating authority for permitting third parties to take actions that injure plaintiffs. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1044 (9th Cir. 2015) (although injury to plaintiffs' interest in endangered fish would be caused by third parties pumping groundwater, traceability and redressability were satisfied because the defendant (U.S. Fish and Wildlife Service) had authority to regulate third parties' actions); *Pye*, 269 F.3d at 462 (standing satisfied, although injury to plaintiffs' interest in

historic area (including cemeteries) would be caused by a county's improvement of a road it owned, where defendant issued permit to county for road construction); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 501 (7th Cir. 2005) (Native American tribe had standing to challenge U.S. Secretary of Interior's approval of compact between Wisconsin and third party tribe to operate a casino "because, but for [Secretary's] approval, the compact would have no effect.").

Without the Parish's approval, third parties cannot construct industrial facilities in the Parish. *See, e.g.*, ROA.646 [¶179] (the Parish has authority under Louisiana Constitution to "adopt regulations for land use, zoning, and historic preservation . . . ."). The Parish does and has approved the construction of industry that has destroyed cemeteries (ROA.718-720 [¶¶494, 498, 503-504]), or that threatens to destroy cemeteries, including Formosa and likely South Louisiana Methanol. ROA.721-727 [¶¶508-539]. Indeed, Formosa has suggested it may remove two cemeteries to build its facility approved by the Parish. ROA.723-724 [¶¶518-520].

> **2. Plaintiffs' Standing Under Claim VII and Other Claims is Also Based on Injury to the Historic and Aesthetic Value of the Area.**

The district court erroneously considered religious injury as the sole basis for standing for Plaintiffs' Louisiana Constitutional Claim (Claim VII).

ROA.1014-1015. Plaintiffs also alleged that the Parish's land use pattern and

practice caused historic, cultural, and aesthetic injuries by authorizing the

destruction of their churches, schools, homes, neighborhoods, and ancestors' burial

sites. ROA.741-742 [¶¶606-612]. For example, Plaintiffs alleged that the Parish's

land use pattern and practice has harmed, and threatens to harm, "other sites with

enormous historic and cultural value to Black communities like churches, schools,

homes, and neighborhoods." ROA.742 [¶609]. This includes Baptist churches in

the majority-Black Fourth and Fifth districts, including the historic Mount Triumph

and Pleasant Hill Baptist Church (ROA.663 [¶250]; ROA.728 [¶543]); as well as

the historic Black communities of Romevile (ROA.728 [¶543]), Freetown

(ROA.622-702 [¶¶84-90, 202, 349, 366, 417, 424]); Welcome (ROA.688-721

[¶¶349, 363, 424, 505]), and Convent (ROA.643-669 [¶¶164, 187, 222-225, 274]).

These are cognizable injuries. *See Summers v. Earth Island Inst.*, 555 U.S.

488, 494 (2009) ("[I]f [harm to the environment] affects the recreational or even

the mere esthetic interests of the plaintiff, that will suffice [to show standing].");

*Lujan*, 504 U.S. at 562–63 ("the desire to use or observe an animal species, even

for purely esthetic purposes, is undeniably a cognizable interest for purpose of

standing."). The district court failed to assess whether these injuries conferred

standing for Claim VII.

48

**B. The District Court Erred in Finding That RISE and Mount Triumph Did Not Have Standing for Their Property-Related Injuries.**

The district court agreed that Plaintiff Inclusive Louisiana has shown sufficient property injury based on the allegations that the Parish's discriminatory siting of heavy industry "affected [Inclusive members'] property values"—which the court correctly found met standing's traceability requirement. ROA.666 [¶259] (Plaintiffs' factual allegations regarding Inclusive); ROA.1008 (finding Inclusive's injuries traceable to Defendants). Curiously, and absent any meaningful explanation, *see* ROA.1008-1009, the court failed to extend that logic to nearly identically alleged property injuries suffered by Plaintiffs RISE and Mount Triumph, holding instead that these Plaintiffs' demonstrable property injuries were not traceable to the Parish's pattern and practice of steering heavy industry into the districts in which these Plaintiffs' members reside and operate. *See, e.g.*, ROA.685, 701, 732 [¶¶338-339, 417, 559] (alleging specific injuries to RISE founder Sharon Lavigne and Mount Triumph).

The court's differential assessment of causation as between Plaintiff Inclusive and Plaintiffs RISE and Mount Triumph is irreconcilable given the similarity of their allegations and reflects an erroneously dismissive interpretation of Plaintiffs' allegations which plausibly demonstrate traceability. Like the allegations related to Inclusive, *see* ROA.666 [¶259] ("The location of [industrial] facilities has affected [Inclusive members'] property values . . . [such that they]

49

cannot afford to relocate."), the Complaint alleges that the Parish's discriminatory industrial steering "surrounded" Mount Triumph with petrochemical industry, ROA.702 [¶423], and that the discriminatory land use pattern and practice has "resulted in diminution in the value of property owned by . . . congregants." ROA.731 [¶559]. *See also* ROA.737 [¶579] (pattern and practice has "lowered [plaintiffs'] property values."). Similarly, the Complaint alleges that RISE founder Sharon Lavigne experienced diminution in her property value because of the Parish's unlawful land use regime. ROA.685 [¶¶338-339] (in a letter to the Council, Sharon Lavigne and Gail LeBoeuf "pointed out the compelling and urgent reasons regarding the need for a moratorium – including the . . . depreciation of *their* property values.").

Accepting these allegations as true, Plaintiffs' injuries are traceable to the Parish. The district court was not at liberty to weigh the strength of Plaintiffs' allegations. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (the "allegations of the complaint are taken as admitted" when reviewing a motion to dismiss).

### C. The Court Erred in Ruling That Plaintiffs Do Not Have Standing Based on Stigmatic Harm.

In addition to health, environmental, property, and religious injuries, as an additional basis for standing for Claims I (Thirteenth Amendment), II (Equal Protection), IV (§ 1982), and VI (RLUIPA Nondiscrimination) Plaintiffs alleged that they faced stigmatic harm as a result of their unequal treatment by the Parish.

The district court erred in finding that Plaintiffs' allegations of unequal treatment were "broad[]" and that, as a result, Plaintiffs failed to meet their burden to satisfy stigmatic harm standing. ROA.1005.

The Supreme Court has held that

> discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' … can cause serious noneconomic injuries to those persons who are denied equal treatment solely because of their membership in the disfavored group.

*Heckler v. Matthews*, 465 U.S. 728, 729 (1984). *See also Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006) ("Classifications based on race carry a danger of stigmatic harm ... [and] may in fact promote notions of racial inferiority and lead to a politics of racial hostility.") (internal quotations omitted). This Court has clarified that this type of injury "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct[.]" *Moore v. Bryant*, 853 F.3d 245, 249 (5th Cir. 2017) (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)). In other words, "to plead stigmatic-injury standing, [a] [p]laintiff must plead that he was personally subjected to discriminatory treatment." *Id.* at 249. *See also*, *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1114-15 (11th Cir. 2021) (finding that a deaf plaintiff adequately alleged stigmatic injury due to city's discriminatory treatment of deaf individuals in publishing videos without closed captions); *De Leon v.*

*Perry,* 975. F. Supp. 2d 632, 646 (W.D. Tex. 2014) (finding that plaintiffs, a gay couple and a lesbian couple, who alleged they suffered "state sanctioned discrimination, stigma, and humiliation" caused by the state's law banning same-sex marriage, and that they are "considered inferior and unworthy" sufficiently alleged stigmatic injury). Plaintiffs have amply alleged that they themselves have been personally subjected to discriminatory treatment at the hands of the Parish, and that this has resulted in the very kind of stigmatic harm the Supreme Court, and this Circuit, has found actionable.

First, as an additional basis for Claims I through IV, Plaintiffs claim that the Parish's unequal treatment has (1) caused them stigmatic injury by steering polluting industry into the majority-Black Fourth and Fifth districts and away from majority-white districts, classifying those districts as less deserving of protection, and (2) "impos[ed a] barrier" which has prevented Plaintiffs from obtaining the same protection against polluting industry afforded to white residents. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (when an imposed barrier "makes it more difficult for members of one group to obtain a benefit than it is for members of another group . . . . the denial of equal treatment resulting from the imposition of the barrier" is the "injury in fact"). *See* ROA.699 [¶408] (founder of Plaintiff RISE: "But it seems like you all like to push everything in the 5th District. Why? Because of the minorities and

because of the blacks. . . ."). Plaintiffs and/or their members themselves have suffered from this unequal treatment because they are Black residents of the Fourth and Fifth districts where heavy industry has been steered despite their requests to the Parish, ROA.685-703 [¶¶341-432], and they have suffered the consequences to their health, environment, property, and religious, historic, and cultural sites. *See, e.g.*, ROA.650-663 [¶¶192-200, 250]; ROA.704-711 [¶¶433-466]; ROA.718-729 [¶¶494, 508, 540-546]. *See also supra* Part III(A), (B).

This decades-long unequal treatment has perpetuated notions of racial inferiority, and caused Plaintiffs stigmatic harm. *See* ROA.601 [¶11] (Plaintiffs' founders, in a letter to St. James Parish Council, stated: "[I]t is painful to see a land use map that so clearly signals the disregard of *our* lives and communities . . ."), ROA.605 [¶19] (Pastor Harry Joseph of Mount Triumph asked in a council meeting, "Why does it always have to be us?"); ROA.694-695 [¶387] (Inclusive Louisiana founding member Barbara Washington stated to the Parish at a public hearing: "We come here to you all, pleading with you all, asking you all to stop letting industry locate near residential areas . . . . But every time we come here and voice our opinions, y'all turn a deaf ear to us; you harden your hearts."); ROA.703 [¶432] (RISE founder Sharon Lavigne says to the Parish, "I am asking you to stop the genocide.").

Second, as an additional basis for Claim IV (§ 1982), Plaintiff Inclusive

Louisiana has alleged that the Parish has caused its members stigmatic injury by

explicitly codifying in the Land Use Plan certain restrictions on the subdivision of

properties in the majority-Black Fourth District, not placed on properties anywhere

else in the Parish. ROA.674-675 [¶¶289-291]; ROA.737 [¶580]. Inclusive

Louisiana's members are "personal[ly] and individual[ly]" harmed, *Lujan*, 504

U.S. at 560, n. 1; *see also Ne. Fla. Chapter of Associated Gen. Contractors of Am.*,

508 U.S. at 666, as some of them own property in the Fourth District and thus, as a

result of the Parish's pattern and practice of land use discrimination, are currently

limited in selling, holding, and conveying their property. ROA.737 [¶¶579-580].

Third, and as an additional basis for Claim VI (RLUIPA

Nondiscrimination), Mount Triumph alleges that the Parish has caused it stigmatic

injury by excluding Baptist churches in the Fourth and Fifth districts from

industrial buffer zones, while placing such buffers around Catholic churches in

majority-white parts of the Parish. ROA.671-677 [¶¶280-288, 300, 303]. Mount

Triumph has experienced this unequal treatment itself because it is a Baptist

Church located in the Fifth District which has been specifically denied protections

afforded to Catholic churches. *See Ne. Fla. Chapter of Associated Gen.*

*Contractors of Am.*, 508 U.S. at  666. *See, e.g.*, ROA.701 [¶417] (Ergon, crude oil

terminal and tank farm, approved by Parish within 500 feet of Mount Triumph on

August 8, 2018); ROA.702 [¶¶419-423] (Syngas, methanol production plant, approved by Parish within 2 miles of Burton Lane Baptist Church and near Mount Triumph in March 25, 2019). Pastor Joseph of Mount Triumph has also alleged the stigmatic harm resulting from this unequal treatment. ROA.691 [¶¶371-372] (asking, during a meeting on the Bayou Bridge Pipeline project: "Why does it always have to be us? . . . . They don't want to hear what people are saying: that this community has been thrown under the bus too many times . . . . We are burying so many people dying of cancer in this district. People are suffering.").

## CONCLUSION

The judgment of the district court should be reversed, and the case should be remanded for further proceedings.

Dated: March 21, 2024

Respectfully submitted,

/s/Astha Sharma Pokharel

Clara Potter, La. Bar Roll No. 38377
Devin A. Lowell, La. Bar Roll No.
36555
William Veazey, Law Student
Counsel
Zoe Berg, Law Student Counsel
TULANE ENVIRONMENTAL
LAW CLINIC
6329 Freret St.
New Orleans, LA 70118
Tel.: (504) 865-5789
Fax: (504) 862-8721
dlowell@tulane.edu
cpotter2@tulane.edu

*Attorneys for RISE St. James*

Astha Sharma Pokharel
Baher Azmy
Sadaf Doost
Pamela C. Spees, La. Bar Roll No. 29679
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6462
asharmapokharel@ccrjustice.org
bazmy@ccrjustice.org
sdoost@ccrjustice.org
pspees@ccrjustice.org

William P. Quigley (cooperating counsel),
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
quigley77@gmail.com

*Attorneys for Plaintiffs Inclusive Louisiana and*
*Mount Triumph Baptist Church*

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) because it contains 12,960 words, excluding the

parts exempted by Rule 32(f); and (2) the typeface and type style requirements of

Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced

typeface (14-point Times New Roman for text and 12-point Times New Roman for

footnotes) using Microsoft Word (the same program used for the word count).

/s/Astha Sharma Pokharel
Astha Sharma Pokharel

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that on March 21, 2024, this brief was served via the Court's CM/ECF Document Filing System upon all registered CM/ECF users in this appeal.


/s/Astha Sharma Pokharel
Astha Sharma Pokharel