# No. 23-30908

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

INCLUSIVE LOUISIANA, by and through their members; MOUNT TRIUMPH BAPTIST CHURCH, by and through their members; RISE ST. JAMES, by and through their members,

*Plaintiffs-Appellants*

V.

ST. JAMES PARISH; ST. JAMES PARISH COUNCIL; ST. JAMES PARISH PLANNING COMMISSION

*Defendants-Appellees*

On appeal from United States District Court for the Eastern District of Louisiana, Case No. 2:23-cv-00987

## ORIGINAL BRIEF FOR DEFENDANT-APPELLEE, ST. JAMES PARISH

### BY ATTORNEYS

John King, La. Bar No. 17004
Thomas Temple, La. Bar No. 26130
Carroll Devillier, Jr., La. Bar No. 30477
Danielle L. Borel, La. Bar No. 35669
**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*Attorneys for St. James Parish*

i

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

1. Inclusive Louisiana – Plaintiff-Appellant;

2. Mount Triumph Baptist Church – Plaintiff-Appellant;

3. RISE St. James – Plaintiff-Appellant;

4. Baher Azmy, Sadaf Doost, Pamela C. Spees, Astha Sharma Pokharel, and William P. Quigley of Center for Constitutional Rights – Counsel for Plaintiffs-Appellants, Inclusive Louisiana and Mount Triumph Baptist Church;

5. Clara Potter, Devin A. Lowell, Zoe Berg, and William Veazey of Tulane Environmental Law Clinic – Counsel for Plaintiffs-Appellants, RISE St. James;

6. St. James Parish – Defendant-Appellee;

7. Danielle Lauren Borel, John Baird King, Carroll Devillier, Jr. of Breazeale, Sachse & Wilson, L.L.P. – Counsel for Defendant-Appellant, St. James Parish;

5022572.v2

*s/ Carroll Devillier, Jr.*

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
*Attorneys for St. James Parish*

5022572.v2

**<u>STATEMENT REGARDING ORAL ARGUMENT</u>**

Defendant-Appellee, St. James Parish agrees that oral argument would be helpful in deciding this case.

5022572.v2

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF AUTHORITIES ................................................................................. vii

INTRODUCTION ..................................................................................................1

JURISDICTIONAL STATEMENT .......................................................................2

STATEMENT OF ISSUES PRESENTED BY PLAINTIFFS-APPELLANTS .......2

STATEMENT OF THE CASE...............................................................................3

SUMMARY OF THE ARGUMENT .....................................................................5

ARGUMENT .........................................................................................................9

I.  ISSUES PRESENTED 3, 4, 5 & 6—THE DISTRICT COURT
    PROPERLY DISMISSED CLAIMS V AND VII FOR LACK OF
    STANDING ON DEFENDANT'S RULE 12(B)(1) MOTION...................10

    A.  Issue Presented 3 & 4—The District Court Correctly Found
        Plaintiffs Do Not Have Standing for Claims V (RLUIPA
        Substantial Burden) and VII (La. Const.) ...........................................12

    B.  Issue Presented 5—The District Court Correctly Found RISE
        and Mount Triumph Lacked Standing for Property Injuries...............18

    C.  Issue Presented 6—The District Court Correctly Found that
        General Allegations of Unequal Treatment are Insufficient for
        Standing ..............................................................................................19

II. ISSUES PRESENTED 1 & 2—THE DISTRICT COURT PROPERLY
    GRANTED DEFENDANT'S RULE 12(B)(6) MOTION AS TO
    CLAIMS I, II, III, IV, AND VI.................................................................23

    A.  Issue Presented 1—Claim I: Thirteenth Amendment (badge or
        incident of slavery)...............................................................................23

        1.  Plaintiffs' 42 U.S.C. § 1983 claims are prescribed...................23

       2.      Plaintiffs failed to plead a badge or incident of slavery ...........37

  B.    Issue Presented 1—Claim II/III: Fourteenth Amendment Equal Protection..........................................................................................40

       1.      Claims II/III are also Prescribed ..............................................41

       2.      Claim II (Equal Protection): Plaintiffs failed to plead facts of a discriminatory intent or lack of equal treatment.......43

       3.      Claim III Substantive Due Process (Bodily Safety and Integrity): Plaintiffs failed to plead facts of a lack of rational objective.......................................................................47

  C.    Issue Presented 1—Claim IV: 42 U.S.C. § 1982 - Property Rights of Black Citizens.......................................................................50

       1.      Plaintiffs' 42 U.S.C. § 1982 claims are prescribed...................50

       2.      Plaintiffs failed to plead intentional discrimination..................50

  D.    Issue Presented 2—Claim VI: RLUIPA (Discrimination)..................51

CONCLUSION............................................................................................55

CERTIFICATE OF SERVICE ...................................................................56

CERTIFICATE OF COMPLIANCE...........................................................57

5022572.v2

# TABLE OF AUTHORITIES

## Cases

*Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023)............................................................24

*Apache Stronghold v. United States*, 95 F.4th 608 (9th Cir. 2024) .........................15

*Arlington Heights*, 429 U.S. 252 (1977) ..................................................................45

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................15

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192 (1997)............................................................................53

*Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971 (5th Cir.1983) .................43

*Boswell v. Claiborne Par. Det. Ctr.*, No. 14-31250, 2015 WL 6161810 (5th Cir. Oct. 21, 2015) ......................................................................................41

*Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656 (6th Cir. 2018) ...........41

*Brown v. Philip Morris Inc.,* 250 F.3d 789 (3d Cir. 2001) ......................................51

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).............................44

*City of Memphis v. Greene*, 451 U.S. 100 (1981).......................................... *passim*

*Civil Rights* (*C.R.) Cases*, 109 U.S. 3 (1883) ........................................... 37, 38, 39

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031 (9th Cir. 2015)............................................................................................16

*Delaware State College v. Ricks,* 449 U.S. 250 (1980)...........................................43

*Doe v. United States*, 853 F.3d 792 (5th Cir. 2017), *as revised* (Apr. 12, 2017) ..................................................................................................................36

*FM Properties Operating Co. v. City of Austin*, 93 F.3d 167 (5th Cir. 1996) . 48, 49

*Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003)..............................................36

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167 (2000).................................................................................................................15

*Guesby v. Bert Nash Cmty. Mental Health Ctr., Inc.*, No. 22-2370-DDC-TJJ, 2023 WL 3040454 (D. Kan. Apr. 21, 2023) .................................................38

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)..........................................34

*Hearn v. McCraw*, 856 F. App'x 493 (5th Cir. 2021)..............................................29

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731 (5th Cir. 2017) .......................................................................... 33, 34

*Heckler v. Mathews*, 465 U.S. 728 (1984)...............................................................20

*Holt v. Hobbs*, 574 U.S. 352 (2015) ........................................................................52

*Humphreys v. Bennett Oil Corporation*, 197 So. 222 (La. 1940)...........................15

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ........................................29

*Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997) ...............................................44

*Jones v. Lumpkin*, 2023 WL 3075063 (5th Cir. 2023) .............................................30

*Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) ....................................52

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................. 10, 11, 20

*Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) ...................15

*McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) .............................49

*McGinnis v. Royster*, 410 U.S. 263 (1973) .............................................................44

*McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850 (5th Cir. 1993) .......43

*Middaugh v. InterBank*, 528 F. Supp. 3d 509 (N.D. Tex. 2021) ............................26

*Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573 (E.D. La. 2016) ......48

*Monumental Task Comm., Inc. v. Foxx*, No. 16-12495, 2016 WL 5780194
    (E.D. La. Oct. 4, 2016) ...................................................................... 47, 48

*Moore v. Bryant*, 853 F.3d 245 (5th Cir. 2017) ................................................ 21, 22

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ................... 26, 34, 36

*Nicholson v. W.L. York, Inc.*, No. 23-20440, 2024 WL 913378 (5th Cir. Mar.
    4, 2024) .......................................................................................................33

*Nobles Const., L.L.C. v. Par. of Washington*, No. CIV.A. 11-2616, 2012 WL
    1865711 (E.D. La. May 22, 2012) ..............................................................48

*Nobles Const., L.L.C. v. Washington Par.*, 544 F. App'x 263 (5th Cir. 2013) .......48

*Notariano v. Tangipahoa Parish School Board, et al*, 266 F.Supp.3d 919
    (E.D.La. 2017) ............................................................................................35

*Owens v. Okure*, 488 U.S. 235 (1989) ....................................................................24

*Palmer v. Thompson*, 403 U.S. 217 (1971) ...................................................... 39, 41

*Perez v. Laredo Junior Coll.*, 706 F.2d 731 (5th Cir. 1983) ..................................41

*Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256 (1979) .............................45

*Petroplex Int'l v. St. James Par.,* 158 F. Supp. 3d 537 (E.D. La. 2016) ................49

*Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768 (9th Cir. 2006) ........................16

*Pye v. United States*, 269 F.3d 459 (4th Cir. 2001) ................................................16

*R.R. Tele'rs v. Ry. Express Agency, Inc.,* 321 U.S. 342 (1944) ..............................36

*Rushing v. Yazoo Cnty. by & through Bd. of Supervisors of Yazoo Cnty.*, 861
    F. App'x 544 (5th Cir. 2021) .............................................................. 30, 42

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702
    F.3d 794 (5th Cir. 2012) ..............................................................................10

5022572.v2

*Stewart v. Mississippi Transport Commission*, 586 F.3d 321 (5th Cir. 2009) . 35, 37

*Stringer v. Town of Jonesboro*, 986 F.3d 502 (5th Cir. 2021)................................24

*Texas v. United States*, 891 F.3d 553 (5th Cir. 2018)...............................................26

*United Air Lines, Inc. v. Evans,* 431 U.S. 553 (1977) ...........................................43

*United States v. City of Parma, Ohio*, 661 F.2d 562 (6th Cir. 1981) .....................31

*United States v. Galloway*, 951 F.2d 64 (5th Cir. 1992) ........................................45

*United States v. Kozminski*, 487 U.S. 931 (1988).................................................23

*United States v. Mitchell*, 327 F. Supp. 476 (N.D. Ga. 1971) ...............................32

*Warth v. Seldin*, 422 U.S. 490 (1975)....................................................................10

*Washington v. Davis*, 426 U.S. 229 (1976) ..........................................................45

*Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287 (4th Cir. 1992) .....................16

*Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560
    (E.D. La. Mar. 30, 2020) ...................................................................................44

*Wilson v. Garcia*, 471 U.S. 261 (1985) ................................................................24

*Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631 (E.D. La. 2006)...........................51

## **Statutes**

28 U.S.C. § 1291 ......................................................................................................2

28 U.S.C. § 1331 ......................................................................................................2

28 U.S.C. § 1658 ....................................................................................................52

42 U.S.C. § 1982 .......................................................................................... *passim*

42 U.S.C. § 1983 .......................................................................................... *passim*

42 U.S.C. § 1988 ....................................................................................................24

42 U.S.C. § 2000 .............................................................................................32, 52

42 U.S.C. § 2000bb ................................................................................................15

42 U.S.C. § 2000(c) ...................................................................................... *passim*

42 U.S.C. § 3610 ....................................................................................................32

42 U.S.C. § 3614 ....................................................................................................32

La. R.S. 8:671-681 ..................................................................................................13

La. R.S. 8:678 ........................................................................................................14

La. R.S. 8:681 ........................................................................................................13

La. R.S. 25:931-943 ................................................................................................13

La. R.S. 25:937 ......................................................................................................14

## Other Authorities

Louisiana Constitution, Article XII ....................................................................3, 17

Louisiana Constitution ................................................................................................4

United States Constitution, Article III ............................................................. 10, 20

United States Constitution, Fourteenth Amendment ..................................... *passim*

United States Constitution, Thirteenth Amendment....................................... *passim*

## Rules

Federal Rules of Civil Procedure, Rule 12(b)(1)..................................... 1, 5, 10, 11

Federal Rules of Civil Procedure, Rule 12(b)(6)............................................ *passim*

Federal Rules of Civil Procedure, Rule 12(f) ...........................................................5

# INTRODUCTION

Plaintiffs, unhappy with environmental emissions of private industry in St. James Parish, filed suit against the Parish attacking decades' of land use decisions under the guise of constitutional claims. Plaintiffs make seven claims based on various assertions of unequal treatment. However, Plaintiffs lack standing to bring several of their claims and all the claims are prescribed. As such, the United States District Court for the Eastern District of Louisiana ("**District Court**") properly dismissed Plaintiffs' claims with prejudice (the "**Judgment**").

The instant appeal arises from the District Court's Judgment dismissing all Plaintiffs' claims pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and/or 12(b)(6). Plaintiffs' Complaint and their various briefs are efforts to couch their case as redressing egregious historic wrongs extending back to the institution of slavery. The end result is a Complaint that reads more like a narrative history of the State of Louisiana than a lawsuit. Following the historical review spanning hundreds of years, the Complaint attempts to cobble together causes of action from a tangled web of irrelevant facts. The District Court reviewed the 151 page and 612 paragraph Complaint and performed the difficult task of separating the wheat from the chaff. The result was a judgment finding Plaintiffs: (1) lacked standing for certain of the claims asserted; and (2) were untimely in asserting all other claims. Thus, all of Plaintiffs' claims have been dismissed.

1

In their Appellants' brief, Plaintiffs reargued all issues raised before the District Court and attempted, unsuccessfully, to breathe life back into the dismissed claims. For all reasons addressed herein, the District Court's Judgment accurately applied the law to the facts plead and it should be affirmed.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this matter based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. The District Court's Judgment was entered on November 22, 2023. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 as the Judgment is the final judgment of a United States District Court.

## STATEMENT OF ISSUES PRESENTED BY PLAINTIFFS-APPELLANTS

1.  Did the District Court err in dismissing Claims I, II, III, and IV as prescribed by recognizing that Plaintiffs' allegations under these claims stemmed from the 2014 passage of the Parish's Land Use Plan and declining to use the sparingly applied continuing violations doctrine?

2.  Did the District Court err in dismissing Claim VI as prescribed because the Complaint lacks a timely allegation?

3.  Did the District Court err in dismissing Claims V and VII for a lack of standing based on Plaintiffs' lack of a property right in the alleged unmarked burial sites and Defendant's lack of control over the private property on which those alleged unmarked burial sites are located?

2

4.    Did the District Court err in dismissing Claim VII for a lack of standing where there is no legal support for Plaintiffs' contention that a historic or aesthetic injury is sufficient to support a claim under Article XII, Section 4 of the Louisiana Constitution.

5.    Did the District Court err in finding Mount Triumph Baptist Church and RISE St. James did not have standing to bring claims based on alleged property injuries where they failed to meet the burden of representational or organizational standing.

6.    Did the District Court err in finding that Plaintiffs' general assertion of discriminatory treatment, without more, was insufficient to support a finding of standing under the applicable federal law.

## STATEMENT OF THE CASE

Plaintiffs, Inclusive Louisiana, Mount Triumph Baptist Church ("**Mount Triumph**"), and RISE St. James ("**RISE**") filed suit against St. James Parish, St. James Parish Council, and St. James Parish Planning Commission alleging seven claims: 1) Claim I—violation of the Thirteenth Amendment (badge or incident of slavery), 2) Claim II—violation of the Fourteenth Amendment (equal protection), 3) Claim III—violation of the Fourteenth Amendment (substantive due process/bodily integrity), 4) Claim IV—violation of 42 U.S.C. § 1982 (property rights of Black citizens), 5) Claim V—violation of 42 U.S.C. § 2000(c), Religious Land Use and

Institutionalized Persons Act ("**RLUIPA**") (substantial burden), 6) Claim VI—violation of 42 U.S.C. §2000(c), RLUIPA (discrimination), and 7) Claim VII—violation of the Louisiana Constitution, Preservation of Cultural Origins provision. On July 17, 2023, Plaintiffs filed an Amended Complaint for Declaratory and Injunctive Relief (the "**Complaint**"). ROA.594-748.

Plaintiffs' Complaint references the centuries-old vile history of slavery in the United States and Louisiana and attempts to cast the actions of current elected officials in that same light. The Complaint goes so far as to plainly state that the adoption of the Land Use Plan by these officials is "racial cleansing" revealing "an intention to erase" historic Black communities. ROA.669-70, ¶¶ 274-275. This type of inflammatory rhetoric disguised as operative facts is designed to evoke an emotional reaction rather than satisfy the pleading requirements necessary to state the legal elements of any actionable claims.

Despite the 151 pages and 612 paragraphs in the Complaint, there is insufficient factual basis for each element of Plaintiffs' claims. The Complaint lacks sufficient allegations to establish that Plaintiffs have standing to bring the claims. It lacks allegations that the elected officials—who unanimously adopted the Land Use Plan and made decisions pursuant to that plan—are in fact motivated, even in part, by the discriminatory intent necessary to sustain those claims. Importantly, it lacks

allegations that any of these claims are asserted in a timely manner. Every facet of Plaintiffs' claims fails, and the claims were properly dismissed.

Defendant, St. James Parish (the **"Parish"** or **"St. James Parish"**), filed a Re-Submitted[1] Rule 12 Motion to Strike Allegations and Dismiss Claims in response to the Complaint. St. James Parish presented arguments under Federal Rules of Civil Procedure Rules 12(f), 12(b)(1) and 12(b)(6). The District Court correctly granted St. James Parish's Rule 12(b)(6) motion dismissing nominal Defendants, St. James Parish Council and St. James Parish Planning Commission. Plaintiffs are not appealing this ruling. The District Court also correctly assessed the Complaint as failing to establish standing on several claims and failing to overcome the applicable statutes of limitations for others. As such, the District Court correctly dismissed Plaintiffs' Claims V and VII for lack of standing and Claims I, II, III, IV, and VI as prescribed, with prejudice. ROA.1033, 1035. This dismissed all of Plaintiffs' claims, and this appeal ensued.

## SUMMARY OF THE ARGUMENT

The Judgment correctly dismissed Plaintiffs' Claims V and VII for lack of standing and Claims I, II, III, IV, and VI as prescribed. The Court's review

---

[1] Plaintiffs amended their complaint after Defendant filed its Rule 12 motion; out of an abundance of caution, Defendant re-asserted its motion specific to the Amended Complaint.

appropriately examined the different elements of standing and prescription as applied to each of Plaintiffs' various causes of action.

**Standing – Religious Injuries.** Plaintiffs have no standing to assert Claim V (RLUIPA-Substantial Burden) or Claim VII (Louisiana Constitutional Claims). Claims V and VII were related to Plaintiffs' purported religious injury arising out of the purported inability to access and worship on private property where unmarked burial sites may be located. One of the seminal elements of standing is a plaintiff's ability to show traceable causation between the alleged harm and the defendant's actions. Here, none of the purported burial sites are alleged to be on property owned by the Parish and the Parish is not alleged to have prevented any Plaintiff from accessing any burial site. Thus, to the extent there is any impediment to worship, that impediment arises from actions of private parties, not the Parish. There is no "traceable causation" which can be identified between Claims V and VII and any action by the Parish. Those claims, therefore, were appropriately dismissed for a lack of standing.

**Standing – Property Injuries.** The analysis of standing for Plaintiffs' property injury claims is similarly performed. Plaintiffs, RISE and Mount Triumph, do not assert that any specific action by St. James Parish caused the reduction in the value of property owned by their members. Accordingly, there is no "traceable

causation" to establish standing. Thus, the District Court appropriately dismissed these claims.

**Standing – Unequal Treatment and Stigmatic Injury**. For the foregoing reasons, Plaintiffs were not able to plead traceable causation with any level of specificity in their religious and property injury claims. Accordingly, Plaintiffs raised broad allegations of unequal treatment and stigmatic injury to attempt to overcome their lack of standing. However, Plaintiffs did not plead that any of their members were "personally denied equal treatment" by the challenged discriminatory conduct. Plaintiffs' attempt to broadly plead numerous claims arising out of the general allegations of "unequal treatment" and "stigmatic injury" are inconsistent with law and fail to meet the "injury in fact" element of standing.

The District Court, therefore, correctly dismissed Claims V and VII for lack of standing. Each of the surviving claims are untimely and were also properly dismissed.

**Prescription – Claim I: Thirteenth Amendment (badge or incident of slavery)**. Plaintiffs' Thirteenth Amendment claims are brought pursuant to 42 U.S.C. 1983. Such claims are governed by the one-year prescriptive period applicable to personal injury claims in Louisiana. While there is no logical connection between the operative land use determinations by St. James Parish and the "badges or incidences of slavery" intended to be addressed by the Thirteenth

7

Amendment, the District Court ultimately found this claim to be prescribed without addressing its meritless nature. Specifically, the alleged discriminatory scheme utilized by the Parish was codified in 2014 in the Land Use Plan. All prior alleged discriminatory acts coalesce in this public and democratically approved Land Use Plan. Notably, the Land Use Plan was amended in 2018. At this point, Plaintiffs were unequivocally on notice of any claims they had against St. James Parish regarding actions prior to the finalization of the Land Use Plan or causes of action which may have arisen from the subsequent implementation.

The Complaint, therefore, was filed well outside of the one-year prescriptive period. To revive this claim, Plaintiffs argue for the application of the "continuing violations doctrine." The governing jurisprudence explains that this doctrine is sparingly applied and is subject to specific limitations. Here, Plaintiffs are attempting to misuse this doctrine to make *all* the aged factual allegations in the Complaint operative and resuscitate claims that expired many years ago. This is not the intended application of the doctrine, and it should not be permitted by this Court.

There are no continuing violations. St. James Parish's alleged *violation* was the adoption of the 2014 Land Use Plan. All subsequent actions are merely the implementation of the previously codified plan. Thus, the Land Use Plan's adoption in 2014 triggered the running of all prescriptive periods. Plaintiffs' Thirteenth Amendment claims brought pursuant to 42 U.S.C. § 1983, prescribed one year later.

The District Court refused to apply the continuing violations doctrine to any of Plaintiffs' claims.

**Prescription - Claim II: Fourteenth Amendment (equal protection), Claim III: Fourteenth Amendment (substantive due process/bodily integrity), and Claim IV: 42 U.S.C. § 1982 – (property rights of Black citizens)**. Plaintiffs' Fourteenth Amendment claims (Claims II and III) are brought under 42 U.S.C. § 1983 and their claim for property rights of Black citizens (Claim IV) is brought pursuant to 42 U.S.C. § 1982. These claims are subject to the same one-year prescriptive period addressed above and are prescribed.

**Prescription – Claim V: 42 U.S.C. § 2000(c), RLUIPA (substantial burden), and Claim VI: 42 U.S.C. § 2000(c), RLUIPA (discrimination)**. RLUIPA claims are subject to the four-year, catch-all, federal statute of limitations. These claims begin to run on the date Plaintiffs' claims accrued. Here, those claims prescribed in 2018, well before the Complaint was filed.

## ARGUMENT

In their Appellants' brief, Plaintiffs' first and second issues presented address the District Court's dismissal of Claims I, II, III, IV, and VI as prescribed. Plaintiffs' third, fourth, fifth, and sixth issues presented address the District Court's dismissal of Claims V and VII entirely and the property claims as to Plaintiffs, RISE and Mount Triumph, for a lack of standing. Plaintiffs' analysis presumes standing, which

Plaintiffs do not have. Standing must be established before a claim can proceed. Therefore, St. James will address standing first, then the issues regarding the ruling on prescription—the order in which the law requires they be evaluated.

## I.   ISSUES PRESENTED 3, 4, 5 & 6—THE DISTRICT COURT PROPERLY DISMISSED CLAIMS V AND VII FOR LACK OF STANDING ON DEFENDANT'S RULE 12(B)(1) MOTION.

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). To have Article III standing:

> first, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal citations and punctuation omitted); *see also Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799 (5th Cir. 2012).

5022572.v2

In its Rule 12(b)(1) motion, St. James Parish challenged Plaintiffs' standing. The injuries resulting from Plaintiffs' claims can be summarized into three categories: property damage (Claims I-IV), health injuries (Claims II and III), and religious injuries (Claims V-VII). For all three categories, Plaintiffs failed to plead injury or a causal connection between the injury and St. James Parish. In briefing, Plaintiffs asserted their injuries also included general unequal treatment.

The District Court granted, in part, the Rule 12(b)(1) motion finding Plaintiffs lacked standing for their religious injuries (Claims V and VII) because there was no causation between St. James Parish and the private parties on whose property the purported unmarked burial sites are located because "private parties not made defendants in this case control whether Plaintiffs may access the cemeteries at issue here," citing *Lujan*, 504 U.S. 555. ROA.1015. The District Court also found RISE and Mount Triumph did not plead ownership of property to support its property claims, but found Inclusive Louisiana had representational standing through its members. Finally, the District Court held that Plaintiffs' broad statements regarding unequal treatment were insufficient to support a finding of standing. Therefore, the District Court dismissed Claims V and VII for a lack of standing. This decision should be affirmed.

5022572.v2

A. **Issue Presented 3 & 4—The District Court Correctly Found Plaintiffs Do Not Have Standing for Claims V (RLUIPA Substantial Burden) and VII (La. Const.).**

Plaintiffs allege that "the land use policies threaten innumerable cemeteries of formerly enslaved persons" and "construction of facilities the Parish has already allowed will potentially desecrate cemeteries with deep spiritual significance to descendants, . . ." ROA.601-02, ¶¶ 12, 14. Essentially, Plaintiffs claim their religious worship has been limited by their inability to access purported unmarked burial sites on private property not owned by them or the Parish. However, Plaintiffs failed to allege an immediate harm or injury to their members that is *caused* by a challenged action *of St. James Parish.* Plaintiffs' attempt to cast blame without regard to temporal or logical connexity fails here.

As pled in the Complaint, the purported unmarked remains and burial sites are alleged to be located on former plantations. ROA.602. These plantations were owned by private parties and sold throughout the centuries from private party to private party. It is not alleged that St. James Parish owns any of the property on which Plaintiffs allege a burial site may exist. Rather, it is alleged that St. James Parish allows those private property owners to utilize their property in a manner that *may* impact unmarked remains.

The District Court correctly rejected this argument, ruling that the actions attacked by Plaintiffs in these claims were not traceable to actions by the Parish.

ROA.1015. Specifically, "[i]n this case, private parties not made defendants in this case control whether Plaintiffs may access the cemeteries at issue here." ROA.1015.

This decision is correct. The Parish does not control whether private parties take actions on their lands that may impact an alleged burial site, nor does the Parish have the authority to mandate a private landowner to allow access to a third-party, access that would otherwise be considered trespassing under Louisiana law. *See* La. R.S. § 8:681 ("Any agreement by the owner of the property to leave the unmarked burial site undisturbed shall not constitute consent on the owner's part to allow relatives of the deceased or any other interested parties free access to the site without the owner's permission."). Decisions by St. James Parish under the Land Use Plan regarding privately owned land are not the cause of any person's inability to access a purported burial site. Even without an industrial construction permit, it is the private ownership of that land that makes access to any purported burial site difficult.

Additionally, the Division of Archaeology is responsible for protecting and preserving abandoned cemeteries, unmarked graves, and human remains under the Unmarked Human Burial Sites Preservation Act (La. R.S. 8:671-681) and the Louisiana Historic Cemetery Preservation Act (La. R.S. 25:931-943).[2] An entire statutory and regulatory program has been enacted to detect, report, and preserve

---

[2] *See* https://www.crt.state.la.us/cultural-development/archaeology/CRM/cemeteries-burials/index.

these types of cemeteries. Any private landowner, whether or not acting pursuant to an approval under the Land Use Plan, is subject to these laws and the duty to preserve and protect these cemeteries. St. James Parish does not independently regulate cemeteries.

In their brief to this Court, Plaintiffs argue that their injuries stem not from the inability to worship on the properties at issue—properties owned and controlled by third party private landowners and, if they contain cemeteries, regulated by the State's Division of Archaeology—but that the Parish's permitting of that property "will, destroy these cemeteries." Doc. 47, p. 54. This is an attempt to redirect the alleged harm from third-parties to the Parish by ignoring all causal relationships.

Logically, the Parish's issuance of permits, without any action taken by the third-party private landowners, would not result in the "destruction and desecration" of any alleged cemetery. It is not a permit issued by the Parish that "hinders their ability to pray upon these cemeteries." It is the intervening actions *by the private landowner* (such as construction or refusal to allow access) that would cause any alleged harm. Further, it is unlawful for private persons to knowingly disturb "an unmarked burial site or any human skeletal remains or burial artifacts in an unmarked burial site." La. R.S. 8:678; *see also* La. R.S. 25:937.

5022572.v2

Plaintiffs also argue that their right to alleged unmarked burial sites has been recognized,[3] citing *Humphreys v. Bennett Oil Corporation*, 197 So. 222, 226 (La. 1940). However, *Humphreys* stands for the proposition that when a plot has been "dedicated" for cemetery purposes at some point in time, the dedication is in the nature of an irrevocable covenant running with the land. Here, there are no allegations that any part of District 4 or 5 was legally dedicated as a cemetery. Nothing in *Humphreys* provides Plaintiffs with standing. In fact, it has been recognized that there is no authority "that would support the extraordinary proposition that [the Religious Freedom Restoration Act] and RLUIPA purport to grant freestanding rights to obtain otherwise unavailable access to the real property of *others* for religious use. **Put simply, neither statute purports to grant persons a 'religious servitude' over the property of others**." *Apache Stronghold v. United States*, 95 F.4th 608, 633 n.8 (9th Cir. 2024) (**emphasis** added) (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452 (1988)).

Similarly, the *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) decision does not support Plaintiffs' standing. In *Friends*

---

[3] The Brief of Amici Curiae Dr. Jacqueline Rivers and The National Baptist Convention of American International In support of Plaintiffs-Appellants and Reversal, doc. 63, argues that Plaintiffs possess a property right in the alleged unmarked burial sites because it is pled in the Complaint. This is markedly opposite of the Supreme Court's clear directive on how legal conclusions in a Complaint should be treated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). As demonstrated, Plaintiffs' allegation that they possess a property right is legally incorrect and unsupported.

*of the Earth, Inc.,* the court found standing based on the plaintiffs' diminished recreational activities that were caused by discharge of the named defendant, Laidlaw. The facts in *Friends of the Earth, Inc.* present the traceable causation that is noticeably lacking from Plaintiffs' allegations against the Parish.

Further, the cases cited by Plaintiffs are legally and factually distinguishable and do not address traceable causation, which is the basis for the District Court's finding. *See Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 779 (9th Cir. 2006) (standing requirement of causation and redressability were "relaxed" because of specific statutory scheme, NEPA, which is not applicable here); *Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287, 1290 (4th Cir. 1992) (standing injury was based on EPA's failure to comply with a legally binding Memorandum of Understanding, circumstances not applicable here); *Pye v. United States*, 269 F.3d 459, 467 (4th Cir. 2001) (standing injury based on plaintiffs' ownership of property on which historic site was located, which differs from the present Plaintiffs that have no ownership rights over the alleged unmarked burial sites).

Plaintiffs cite *Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1044 (9th Cir. 2015) for the proposition that traceability is present when a regulatory authority permits third parties to take actions that injure plaintiffs. However, this is a misstatement of *Ctr. For Biological Diversity's* holding. Rather, the case acknowledges that a plaintiff claiming *procedural* injuries—which are not

16

pled here—has a lower bar for causation and redressibility. Moreover, that plaintiff pled the regulatory authority's noncompliance with applicable binding procedures to establish its claim for procedural injuries.

Here, the complained of actions—access to private property or construction on private property on an alleged cemetery—are not regulated by the Parish. Plaintiffs incorrectly argue that "[w]ithout the Parish's approval, third parties cannot construct industrial facilities in the Parish." Doc. 47, p. 57. As recognized by the District Court, private landowners could "desecrate" an alleged cemetery or prevent access to Plaintiffs without a permit from the Parish.

Plaintiffs also argue that their injuries are not just access to property, but historic and aesthetic injury, for its Louisiana Constitutional Claim. Doc. 47, p. 54. However, the history Plaintiffs allege that is being disrupted emanates from the alleged cemeteries located on the property of private citizens. Thus, this claim suffers the same lack of causation *and* traceability.

Also, nothing in Louisiana law supports the notion that a claim for aesthetic injury can be brought under Article XII, Section 4 of Louisiana's Constitution. The District Court correctly found that Plaintiffs lack standing to bring their religious injury claims in Claims V and VII against the Parish for a lack of traceable causation.

5022572.v2

**B.** **Issue Presented 5—The District Court Correctly Found RISE and Mount Triumph Lacked Standing for Property Injuries.**

The District Court found that Plaintiffs pled injury for standing through their general, conclusory allegations of decreased property values. ROA.1005-06, 1007-08. For causation, the District Court found Inclusive Louisiana had alleged the decreases in property values were caused by actions of the Parish, citing paragraph 258 (ROA.666) of the Complaint to support representational standing. However, the District Court found that the Complaint did "not allege that Defendants' conduct significantly contributed to property injuries experienced by" Plaintiffs, Mount Triumph and RISE, or their members. ROA.1008-09. Lacking traceable causation between alleged decreased property values and actions of the Parish, Mount Triumph and RISE do not have standing.

Plaintiffs argue that the District Court's finding that Inclusive Louisiana pled causation regarding decreased property values, ROA.666, ¶ 259, should have also applied to RISE and Mount Triumph. However, the quoted allegations are general, conclusory statements with no link between the general assertion of decreased property value and the Parish:

> 338. On September 13, 2019, Gail LeBoeuf, founding member of Plaintiff Inclusive Louisiana, and Sharon Lavigne, founder of Plaintiff RISE St. James, sent a letter to each of their Council members in the 4th and 5th Districts, respectively, requesting that they put the issue of a moratorium on the siting of new petrochemical facilities and expansions of existing facilities on the agenda of the Parish Council.

5022572.v2

339. In their letter they pointed out the compelling and urgent reasons regarding the need for a moratorium – including the alarming rates of cancer and other illnesses associated with pollution from area industry and depreciation of their property values.

\* \* \*

417. On August 8th, 2018, the Parish Council unanimously approved the land use application of Ergon St. James Inc. for an expansion of its crude oil terminal and tank farm located just 500 feet from Plaintiff Mount Triumph Baptist Church near the historic community of Freetown, and on the site of the former St. Cecile plantation.

\* \* \*

559. The discriminatory land use system has also resulted in diminution in the value of property owned by Plaintiffs, their members and congregants, some of which has been in their families since shortly after emancipation, and by other Black residents, churches, and associations in the 4th and 5th Districts of St. James Parish.

ROA.685, 701, 732. Nothing in these allegations draws a factual connection between alleged decreased property values and actions of the Parish with any level of specificity. The District Court correctly found that Mount Triumph and RISE failed to plead causation for the alleged property injuries. Without pleading causation, Plaintiffs lack standing.

## C. Issue Presented 6—The District Court Correctly Found that General Allegations of Unequal Treatment are Insufficient for Standing.

Before the District Court, Plaintiffs argued that their alleged unequal treatment was injury sufficient to support standing. ROA.889-90. The District Court specifically rejected this notion, reiterating "the judicially recognized test for an

injury for standing purposes" found in *Lujan*, 504 U.S. 555. ROA.1004-05. As such, the District Court correctly held that "alleging broadly unequal treatment as a basis for numerous claims does not suffice to meet" Plaintiffs' burden of establishing injury. ROA.1005.

Plaintiffs cite *Heckler v. Mathews*, 465 U.S. 728, 738 (1984) for the proposition that the stigma of unequal treatment can be an injury for standing purposes. Doc. 47, p. 61. Again, this assertion misconstrues the decision. In *Heckler*, the plaintiff (a male) sued over a facially discriminatory provision of the Social Security Act that treated males differently than females in terms of spousal benefits. It was not the "stigma" of unequal treatment that supported the plaintiff's standing, but actual, clearly identified unequal treatment that was evident from the law. *Id.* ("He alleges that the pension offset exception subjects him to unequal treatment in the provision of his Social Security benefits solely because of his gender; specifically, as a nondependent man, he receives fewer benefits than he would if he were a similarly situated woman.") Moreover, the *Heckler* court's discussion of archaic notions causing noneconomic injuries was in relation to the consideration of redressability where the method of redress was cessation of the unequal treatment, which is a noneconomic remedy. *Id.* This analysis cannot be applied to determine whether there is injury (without regard to redressability) to support Article III standing.

5022572.v2

Moreover, the *Moore v. Bryant*, 853 F.3d 245 (5th Cir. 2017) decision cited by Plaintiffs also supports the District Court's ruling and the finding that Plaintiffs have not pled injury based on stigma. In *Moore,* this Court summarized the applicable principle as follows:

> Plaintiff first alleges that he is unavoidably exposed to the state flag and that the flag's message is "painful, threatening, and offensive" to him, makes him "feel like a second-class citizen," and causes him both physical and emotional injuries." At its core, Plaintiff's injury theory is that the Mississippi state flag stigmatizes him.

> Stigmatic injury "accords a basis for standing only to 'those **persons who are personally denied equal treatment**' by the challenged discriminatory conduct[.]" *Allen v. Wright*, 468 U.S. 737, 755, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting *Heckler v. Mathews*, 465 U.S. 728, 739–40, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984)), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). Accordingly, to plead stigmatic-injury standing, Plaintiff must plead that he was personally subjected to discriminatory treatment. *See Carroll v. Nakatani*, 342 F.3d 934, 946 (9th Cir. 2003) ("**Being subjected to a racial classification differs materially from having personally been denied equal treatment**.... [Plaintiff] does not cite, and **we do not find, any authority supporting the proposition that racial classification alone amounts to a showing of individualized harm**."); *see also Miller v. Albright*, 523 U.S. 420, 451, 118 S.Ct. 1428, 140 L.Ed.2d 575 (1998) (O'Connor, J., concurring); *Binno v. Am. Bar Assoc.*, 826 F.3d 338, 351 (6th Cir. 2016); *Rainbow/PUSH Coal. v. F.C.C.*, 396 F.3d 1235, 1241 n.6 (D.C. Cir. 2005); *Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 596 (10th Cir. 1996); *Kurtz v. Baker*, 829 F.2d 1133, 1141 (D.C. Cir. 1987). He has not done so and thus, fails to plead injury.

*Moore v. Bryant*, 853 F.3d 245, 249 (5th Cir. 2017) (**emphasis** added). While Plaintiffs summarily assert that they "have been personally subjected to

discriminatory treatment at the hands of the Parish," doc. 47, p. 62, there are no factual allegations pled to support this conclusion.

Plaintiffs make generalized statements about being subjected to pollution to argue a stigmatic injury is present. Doc. 47, pp. 62-63. Plaintiffs also argue that a stigmatic injury is present for Inclusive Louisiana's members because the members' property is subject to restrictions under the Land Use Plan. Doc. 47, p. 64. Lastly, Plaintiffs argue that they faced stigmatic injury because they—as Baptist churches— were excluded from the buffer zone included on the Land Use Plan.[4] Doc. 47, p. 54.

The proper analysis for whether stigmatic injury accords a basis for standing is whether "'those persons [were] personally denied equal treatment' by the challenged discriminatory conduct," *Moore*, 853 F.3d at 249. The analysis, therefore, is no different than the injury in fact analysis of standing, on which the District Court properly ruled. These allegations were analyzed by the District Court under its discussion of religious and property injuries.

---

[4] This assertion confirms the District Court's holding that RISE and Mount Triumph lack standing to assert the property injuries.

## II. ISSUES PRESENTED 1 & 2—THE DISTRICT COURT PROPERLY GRANTED DEFENDANT'S RULE 12(B)(6) MOTION AS TO CLAIMS I, II, III, IV, AND VI.

Having dismissed Claims V and VII for a lack of standing, the District Court proceeded to analyze whether Plaintiffs stated a claim, under a Rule 12(b)(6) motion, for Claims I, II, III, IV, and VI.

### A. Issue Presented 1—Claim I: Thirteenth Amendment (badge or incident of slavery)

The Thirteenth Amendment to the United States Constitution states:

**Section 1.** Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
**Section 2.** Congress shall have power to enforce this article by appropriate legislation.

U.S. Const. amend. XIII. "The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (citations omitted).

### 1. Plaintiffs' 42 U.S.C. § 1983 claims are prescribed.

Plaintiffs bring their Thirteenth Amendment claims pursuant to 42 U.S.C § 1983. ROA.603, ¶15. Congress failed to provide a specific statute of limitations to

govern § 1983 actions. *Owens v. Okure*, 488 U.S. 235, 239 (1989). As such, the Supreme Court, in interpreting the provisions of 42 U.S.C. § 1988, stated that the analogous state statute of limitations should be applied to § 1983 claims. *Id.* at 240 (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). The Supreme Court in *Owens* confirmed that "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 250. The Fifth Circuit has consistently applied a state's general personal injury statute of limitations to § 1983 claims. *See, e.g. Allen v. Hays*, 65 F.4th 736, 751 (5th Cir. 2023). "Louisiana's relevant limitations period is one year." *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021). Thus, the District Court correctly confirmed that "in this case, Louisiana's one-year statute of limitations period applies to the claims in this case brought pursuant to § 1983." ROA.1022.

Applying the one-year statute of limitations, the District Court noted that limitation periods begin to run when a plaintiff becomes aware he has suffered an injury or has enough information to know of the injury. ROA.1022. The District Court correctly noted that all actions of the Parish are public record and published soon after their occurrence. Indeed, the Complaint is replete with descriptions of Plaintiffs' comments on, involvement in, and opposition to various matters. The Land Use Plan itself was publicly adopted in 2014, ROA.670, ¶275, and publicly amended in 2018, ROA.676, ¶300. The numerous decisions prior to the Land Use

Plan and the numerous permitting decisions after the Land Use Plan discussed in the Complaint occurred well outside of the prescriptive period.

After summarizing Plaintiffs' claims based on the timeframe of their occurrence, ROA.1026-29, the District Court noted that "at their core, Plaintiffs' claims against Defendants are based on one discrete action by Defendants: the adoption in 2014 of the Land Use Plan that explicitly directed the zoning of industrial plants into predominantly Black areas of St. James Parish and created buffer zones protecting predominantly white space." ROA.1029. As it noted: "[t]he execution of the plan through subsequent discrete acts approving and rejecting certain permits (South Louisiana Methanol, Wolverine, Yuhuang, Bayou Bridge Pipeline, Formosa, Syngas, solar facilities) in accordance with that plan is a continuing effect of that initial harmful act, rather than a continuing violation itself." ROA.1029. Therefore, "Plaintiffs' claims accrued when the Parish adopted the Land Use Plan and Plaintiffs learned of the changes: in 2014." ROA.1029-30. The Complaint was filed March 21, 2023. Thus, any action under § 1983 or the Thirteenth Amendment has prescribed.

In defense of the clear timing issue, Plaintiffs argue they are pursuing a continuing violation. There is no support for Plaintiffs' "continuing violation" theory such that their claims are immune from *any* prescriptive period.

"The Supreme Court has stressed that the equitable version of the [continuing violation] doctrine should be invoked 'sparingly,' only when the situation calls for

25

it." *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018). Aside from fair

housing jurisprudence, "the continuing-violations doctrine, which most frequently

applies in the employment-discrimination context, should not be invoked where the

defendants took action that 'in fairness and logic,' should have alerted [the plaintiff]

to act years ago." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 527 (N.D. Tex. 2021)

(citing *Texas*, 891 F.3d at 562). This Court explained the applicable test for a

continuing violation as follows:

> The Supreme Court has stressed that the equitable version of the
> doctrine should be invoked "sparingly," only when the situation calls
> for it. We have heeded this instruction: as we have repeatedly held,
> "[g]enerally, in determining if equitable tolling is appropriate, we focus
> the inquiry 'on what event, in fairness and logic, should have alerted
> the average lay person to act to protect his rights.'"

*Texas* , 891 F.3d at 562.

The District Court correctly noted that the continuing violation doctrine is an

equitable doctrine that should be applied sparingly, citing *Nat'l R.R. Passenger

Corp. v. Morgan*, 536 U.S. 101, 113 (2002). ROA.1023-24. It also found that

Plaintiffs' "claims accrued when Plaintiffs became aware they suffered an injury or

had sufficient information to know they were injured." ROA.1025-26. The District

Court correctly applied this Court's guidance in finding that Plaintiffs were alerted

to act to protect their rights when the 2014 Land Use Plan was formally adopted by

St. James Parish.

5022572.v2

The allegations in the Complaint establish that the passage of the Land Use Plan alerted, or should have alerted, Plaintiffs. Plaintiffs pled that the Land Use Plan embodied and perpetuated the discrimination and disparate impact suffered by the Black community since 1958. Plaintiffs allege that the Land Use Plan was adopted "in order to protect the interests of white residents." ROA.670, ¶ 275. While Defendant does not agree it is factually accurate, Plaintiffs pled that "the 2014 Plan codified and distilled into an ordinance what the Parish had long been doing in practice – steering industry to predominantly Black parts of the Parish and protecting predominantly white parts of the Parish;" and that the "2014 Plan also contained an ominous tell: it designated the residential areas in the predominantly Black 4th and 5th Districts as "Existing Residential/Future Industrial." ROA.672, ¶ 285; ROA.670, ¶ 278. Plaintiffs' allegations characterized the 2014 Plan as follows: "This new designation that seemingly came out of nowhere was an obvious confirmation that the Parish Council was planning for the end of these historic Black communities, and the Plan was aimed at hastening their erasure from the Parish – that it was, in effect, a racial cleansing plan." ROA.672, ¶ 286. The Plan "thus added even more methods of discriminating against Black residents and depriving them of their rights to equal protection of the laws, and non-discrimination in the use and enjoyment of their property on equal terms of white citizens." ROA.675, ¶ 291.

5022572.v2

These allegations establish that the 2014 Land Use Plan fairly and logically alerted Plaintiffs to the claims now presented in the Complaint. The 2014 Land Use Plan is also the appropriate event in time on which to base this analysis because, prior to 2014, there are no allegations of any actions taken by St. James Parish, but only discussions of actions taken by non-party private parties. Logically, the actions prior to the plan implementation in 2014 were discrete actions "that put Plaintiffs on notice to protect their rights, thereby starting the clock on prescription," and are undoubtedly outside of the one-year prescriptive period. ROA.1030. As such, the District Court correctly found Plaintiffs' Claim I was prescribed. ROA.1030.

To extend the prescriptive period, Plaintiffs then address two specific allegations as actions within the limitations period: 1) the August 17, 2022 decision to pass a Parish-wide moratorium on solar farms (the Parish-wide moratorium applied equally to white and Black districts); and 2) the Parish Council's continuing lack of attention to a September 2019 request from a member of Inclusive Louisiana for a moratorium on siting new petrochemical facilities. ROA.638-86, ¶¶ 330-341. Plaintiffs assert that the Parish implemented a parish-wide moratorium on solar farms on August 17, 2022, by adopting a resolution before it, while not considering the petrochemical moratorium requested by Plaintiffs in September 2019,[5] which

---

[5] Plaintiffs' letter dated September 13, 2019 requesting a petrochemical moratorium is clearly beyond the prescriptive period.

was never on the Parish Council's agenda for consideration. ROA.638-86, ¶¶ 330-341. The moratorium on solar farms was Parish wide, meaning it did not discriminate against any district, race, or citizen. Also, the Council's failure to take action at the request of a citizen is not an act of discrimination; if every action *not taken* by a governing authority created a cause of action to address decades worth of allegations, every plaintiff would make vain and useless requests for the sole purpose of setting up lawsuits. These are not allegations of discriminatory acts that violate any law, much less the Thirteenth Amendment/42 U.S.C. § 1983 (Claim I), the Fourteenth Amendment Equal Protection (Claim II) or Substantive Due Process/Bodily Safety and Integrity (Claim III), Property Rights of Black Citizens/42 U.S.C. § 1982 (Claim IV), or RLUIPA (Claim VI).[6]

The District Court's reasoning is consistent with this Court's recent application of the continuing violation doctrine to the § 1983 claims raised in *Hearn v. McCraw*, 856 F. App'x 493(5th Cir. 2021). In *Hearn,* the plaintiffs contended that their lifetime obligation to register with the State of Texas as known sex offenders

---

[6] Plaintiffs attached exhibits to their Appellants' Brief in an attempt to add actions that occurred in 2023 that are not included in Plaintiffs' Complaint. Doc. 47, p. 31. The Notice of Docket Activity, March 22, 2024, stated that no action would be taken as to these exhibits "because attachments to the brief are not allowed without leave of court." It is axiomatic that a plaintiff cannot address on appeal issues not presented to a trial court, much less factual allegations never included in a Complaint dismissed on a Rule 12(B)(6) failure to state a claim. "An appellate court may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling." *In re Deepwater Horizon*, 739 F.3d 790, 798 (5th Cir. 2014) (citations omitted).

was violative of their substantive due process rights under the Fourteenth Amendment of the U.S. Constitution through a 42 U.S.C. § 1983 suit. *Id.* at 495. Plaintiffs alleged their claims were timely under the continuing violation doctrine because the law, as adopted, required annual registration. *Id.* at 496. This Court noted that Plaintiffs' claims accrued in "1997 (or 1998 at the latest) when the law changed….and Plaintiffs learned of the change," and "the fact that Plaintiffs must register annually is not a continuing tort, but rather the continuing effects of an alleged harm." *Id.* For these reasons, this Court refused to apply the continuing violation doctrine.[7] *Id.; see also, Jones v. Lumpkin*, 2023 WL 3075063 (5th Cir. 2023) (The plaintiff should have known about the institution's prayer oil policy in 2012 when he was reincarcerated and his inability to access "scented prayer oil from outside vendors in 2017 is not 'a continuing tort, but rather the continuing effects of an alleged harm' that existed when he was reincarcerated in 2012") (citing *Hearn*).

That same reasoning applies here. Plaintiffs not only learned of the Land Use Plan in 2014 and its amendment in 2018, but actively participated in the public meetings and discussions that led to their adoption. All subsequent implementation of the Land Use Plan is not a continuing violation, but rather only the "continuing

---

[7] This Court applied the same rationale in rejecting a continuing-violation doctrine to a § 1983 claim, finding that new claims did not accrue each time the county issued a paycheck that was in line with the policy it passed, but that the passing of the alleged offending policy was the discrete act which put the plaintiff on notice on started the clock. *Rushing v. Yazoo Cnty. by & through Bd. of Supervisors of Yazoo Cnty.*, 861 F. App'x 544, 553 (5th Cir. 2021) (unreported).

effects of an alleged harm," namely, the passage of the Land Use Plan in 2014. The Land Use Plan was passed with all trappings of legislative due process. Plaintiffs and their members participated in this process. Plaintiffs cannot reasonably contend that this formal action by St. James Parish failed to place them on notice of their potential claims.

Plaintiffs instead also argue the District Court's finding is incorrect because Plaintiffs challenge "the Parish's unlawful pattern, practice, and policy of discriminatory steering that began long before the Plan was adopted." Doc. 47, p. 33. Plaintiffs address the prescriptive period issues in broad strokes, attempting to revive prescribed claims by arguing that the recent decisions of a democratically elected parish government are a *continuation* of slavery and its artifices. This contention is patently absurd and inconsistent with the reality that the Parish, and the elected officials directing its affairs, have changed dramatically over the years. The Parish is not an autonomous body susceptible to continued discriminatory intent. Plaintiffs' argument would make the Parish liable for *every action* during hundreds of years of activity complained of by Plaintiffs. The law creates prescriptive periods and statutes of limitations to prevent precisely this type of untenable result.

Plaintiffs inappropriately base their assertion of a pattern or practice to support a "continuing violation" on *United States v. City of Parma, Ohio*, 661 F.2d 562, 573 (6th Cir. 1981) (which cites *United States v. Mitchell*, 327 F. Supp. 476, 478 (N.D.

Ga. 1971)). In *City of Parma, Ohio*, the court declined to find that the fair housing

action violation claims were barred by the 180-day time limit contained in the act

for the "enforcement of private persons" because the suit had *not* been brought by a

private person, but was brought by the Attorney General, who was separately

empowered by legislation to bring a civil claim against any person "engaging in a

pattern or practice of resistance to the full enjoyment of any of the rights" of that act.

*Mitchell*, 327 F. Supp. at 478, n.1. Nothing in *City of Parma, Ohio* creates a "pattern

or practice" or "continuing violation" exception to claims before this Court.

Application of the continuing violation doctrine to housing discriminatory

"practices" or employment "practices" is supported statutorily. *See* 42 U.S.C. § 3614

("(a) Pattern or practice cases. Whenever the Attorney General has reasonable cause

to believe that any person or group of persons is engaged in a pattern or practice of

resistance to the full enjoyment of any of the rights granted by this subchapter . . ."); 

42 U.S.C. § 3610 ("(a) Complaints and answers. (1)(A)(i) An aggrieved person may,

not later than one year after an alleged discriminatory housing practice has occurred

or terminated, . . ."); 42 U.S.C. § 2000e-6 ("Whenever the Attorney General has

reasonable cause to believe that any person or group of persons is engaged in a

pattern or practice of resistance to the full enjoyment of any of the rights secured by

this subchapter"); 42 U.S.C. § 2000e-5 ("The Commission is empowered, as

hereinafter provided, to prevent any person from engaging in any unlawful

employment practice as set forth in section 2000e-2 or 2000e-3 of this title."). Here, there is no statute that allows Plaintiffs to ignore the clear statutes of limitations for the claims pled merely because they allege a pattern or practice.

Recently, citing *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731 (5th Cir. 2017), this Court has confirmed that "the Supreme Court and this court have clarified, the continuing violations doctrine applies **only** in the context of hostile work environment claims, . . ." *Nicholson v. W.L. York, Inc.*, No. 23-20440, 2024 WL 913378, at \*4 (5th Cir. Mar. 4, 2024) (unreported) (emphasis supplied). In *Heath,* this Court noted the distinction between discrete acts that form the basis of traditional discrimination claims from continuing conduct that forms the basis of hostile work environment claims, and explained:

> Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are. **Hostile environment claims are "continuing" because they involve repeated conduct, so the "unlawful employment practice" cannot be said to occur on any particular day.** *Morgan*, 536 U.S. at 115–17, 122 S.Ct. 2061. As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* As one circuit has helpfully described *Morgan*'s reasoning, a plaintiff's hostile environment claim "is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant," so "the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement."

850 F.3d at 373 (**emphasis** added). The Supreme Court recognized the gravamen of any hostile work environmental claim as follows:

Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348–349 (3d ed.1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("As we pointed out *in Meritor [Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986),] 'mere utterance of an ... epithet which engenders offensive feelings in a[n] employee,' *ibid*. (internal quotation marks omitted), does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts.

*Nat'l R.R. Passenger Corp.*, 536 U.S. at 115. Unlike the claims brought in *Nat'l R.R. Passenger Corp.* 536 U.S. at 116, *Heath*, 850 F.3d 731, and *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), Plaintiffs' claims do not contain the "pattern or practice" element which exists in "hostile work environment claims."

Plaintiffs' claims are not hostile work environment claims. None of Plaintiffs' claims *require* proof of repeated conduct nor the creation of a particular *environment*. Plaintiffs have alleged discrete acts of purported discrimination from multiple different sources and third parties and attempted to weave those into a pattern and practice of the Parish only to survive prescription. Plaintiffs alleged multiple separate and discrete actions of multiple different actors occurring over

many decades culminating in the adoption of the Land Use Plan. Plaintiffs were alerted to their claims years ago.

Even if the continuing violation doctrine is applicable, which is denied, it is subject to limitations. For example, *Stewart v. Mississippi Transport Commission*, 586 F.3d 321 (5th Cir. 2009), identifies three limits on the continuing violation doctrine: (1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose without negating the particular purpose of the filing requirement." *Id.* at 328; *see also Notariano v. Tangipahoa Parish School Board, et al*, 266 F.Supp.3d 919, 924 (E.D.La. 2017) ("intervening action by the [defendant which] will sever the acts that precede it from those subsequent to it"). The passage of the 2014 Land Use Plan is an intervening act and a clear demarcation between land use decisions made by private parties prior to the Land Use Plan and subsequent decisions. Further, the major revisions to the Land Use Plan in 2018 (which included removing the two-mile buffer zone) severs actions between 2014 and 2018 and those thereafter.

Even if Plaintiffs' claims are viewed as repeated discrete actions, they would not support a finding of a continuing violation and Plaintiffs' allegations are

prescribed. "Discrete actions, even if 'serial,' 'are not entitled to the shelter of the continuing violation doctrine.'" *Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017), *as revised* (Apr. 12, 2017) (citing *Nat'l R.R. Passenger Corp.* 536 U.S. at 113; *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003)). The risk of misapplication of the continuing violation doctrine is clear here. If Plaintiffs' reasoning were applied here, no land use decision of the Parish would *ever* be final. New plaintiffs – years (or even decades) from now – could challenge any land use decision based upon a broad interpretation of the continuing violation doctrine to superimpose historical wrongs from centuries past onto current and future land use decisions. This type of uncertainty created by the prosecution of aged theories of recovery is precisely the result that is intended to be prevented by the application of pertinent statues of limitations. *See Nat'l R.R. Passenger Corp.* 536 U.S. at 125 (O'Connor, J., concurring) (noting that statutes of limitations are "designed" to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared" (quoting *R.R. Tele'rs v. Ry. Express Agency, Inc.,* 321 U.S. 342, 348–49 (1944)).

Here, Plaintiffs' claims are untimely, and the requested application of the continuing violation doctrine does far too much harm to be equitably applied here.[8]

---

[8] *See Stewart*, 586 F.3d at 328, noting that even if a plaintiff can show the elements of a continuing violation, the doctrine can be tempered by the court's equitable powers.

## 2. Plaintiffs failed to plead a badge or incident of slavery.

After finding Plaintiffs' Claim I prescribed, the District Court moved on to discuss the remaining claims. However, even if Claim I is not prescribed, it should be dismissed under Rule 12(b)(6) as Plaintiffs did not plead a badge or incident of slavery. Plaintiffs did not plead any deprivation of rights that is a "badge or incident of slavery."

In 1883, the Supreme Court interpreted the Thirteenth Amendment by stating: "it is assumed that the power vested in Congress to enforce the article by appropriate legislation [Section 2], clothes Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States. . ." *Civil Rights* (*C.R.) Cases*, 109 U.S. 3, 20 (1883). The Supreme Court described the incidents of slavery as "[c]ompulsory service of the slave for the benefit of the master, restraint of his movements except by the master's will, disability to hold property, to make contracts, to have a standing in court, to be a witness against a white person, and such like burdens and incapacities were the inseparable incidents of the institution." *C.R. Cases*, 109 U.S. at 22. The Supreme Court continued by making the point that many wrongs that might violate an individual's right to equal protection under the Fourteenth Amendment were not wrongs actionable under the Thirteenth Amendment as "badges and incidents of slavery" "when not involving the idea of any **subjection of one man to another**." *Id.* at 24. The Supreme Court

demonstrated its point by declaring that the unequal treatment of Blacks, through the denial based on race of an accommodation or privilege to use an inn, public conveyance, or theater, "has nothing to do with slavery or involuntary servitude." *Id.* at 24.[9] "It would be running the slavery argument into the ground to make it apply to every act of discrimination . . ." *Id.* "[C]ourts routinely reject Thirteenth Amendment claims that do not involve forced or coerced labor." *Guesby v. Bert Nash Cmty. Mental Health Ctr., Inc.*, No. 22-2370-DDC-TJJ, 2023 WL 3040454, at *2 (D. Kan. Apr. 21, 2023). "[T]he theme of the debates surrounding this statute is that the former slaves continued to be subject to direct, intentional abuses at the hands of their former masters. That was the problem Congress intended to address and that focus should determine the reach and scope of this statute." *City of Memphis v. Greene*, 451 U.S. 100, 134 (1981) (White, J., concurring).

A zoning ordinance, even one that might disparately impact minorities, is not a "badge or incident of slavery" subject to protections under the Thirteenth Amendment. In *Palmer v. Thompson,* the Supreme Court rejected the notion that a city council decision to close a public pool was a "badge or incident" of slavery as a violation of the Thirteenth Amendment, finding to hold such "would severely stretch its simple words and do violence to its history." 403 U.S. 217 (1971). Importantly,

---

[9] The Supreme Court confirmed such a wrong would properly be addressed through present state laws or, if sanctioned by state law, through the Fourteenth Amendment, but not the Thirteenth Amendment. *See C.R. Cases*, 109 U.S. at 24 (1883).

the Supreme Court stated: "[e]stablishing this Court's authority under the Thirteenth Amendment to declare new laws to govern the thousands of towns and cities of the country would grant it a law-making power far beyond the imagination of the amendment's authors." *Id.* at 226–27. The Supreme Court clarified "a regulation's adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group. To regard an inevitable consequence of that kind as a form of stigma so severe as to violate the Thirteenth Amendment would trivialize the great purpose of that charter of freedom." *City of Memphis*, 451 U.S. at 128.

Here, the passing of a zoning ordinance and its implications that may have an adverse impact on specific districts is a "routine burden of citizenship" and not a violation of the Thirteenth Amendment. *See id*. at 128. The Land Use Plan cannot be said to implement compulsory labor for the benefit of a master, to restrain movements, or "such like burdens and incapacities [which] were the inseparable incidents of the institution [of slavery]." *C.R. Cases*, 109 U.S. at 22 (1883). The Land Use Plan does not involve the "subjection of one man to another."

Plaintiffs attempt to draw a connection between slavery and the 2014 Land Use Plan since "plantations that once existed in the Parish had been sold for development and were home to heavy industry." ROA.667, ¶ 267. Yet, the sales of large tracts of land to industry were done by private parties, *not St. James Parish*. At

a minimum, this severs any potential causal chain between the Land Use Plan and the geographic composition that arose in St. James Parish after the end of slavery. No part of the Land Use Plan or parish permitting decisions is akin to the involuntary servitude prohibited by the Thirteenth Amendment. Plaintiffs' utilization of the Thirteenth Amendment here "would severely stretch its simple words and do violence to its history."

### B. Issue Presented 1—Claim II/III: Fourteenth Amendment Equal Protection

In pertinent part, the Fourteenth Amendment states:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> * * *
>
> Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV. As with the Thirteenth Amendment, the provisions of the Fourteenth Amendment must be enforced through enacting legislation. "[T]he Fourteenth Amendment does not create a private right of action; instead, '§ 1983 provides a cause of action for all citizens injured by an abridgement of th[e] protections' set forth in 'the Equal Protection and Due Process Clauses of the

Fourteenth Amendment.'" *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656 (6th Cir. 2018) (citations omitted).

Plaintiffs bring their Fourteenth Amendment claims pursuant to 42 U.S.C 1983. ROA.603, ¶15. As such, the question is whether the adoption of the Land Use Plan is a state action that denies "the equal protection of the laws" to Blacks. *See Palmer v. Thompson*, 403 U.S. at 220.

### 1. Claims II/III are also prescribed.

Because the allegations supporting Plaintiffs' Claims II and III "are based on the same actions by Defendants as alleged [by Plaintiffs] in their Thirteenth Amendment Claim," the District Court correctly found that "Claim II and III must also be dismissed as prescribed." ROA.1030.

Plaintiffs argue again for a continuing violation theory, citing *Perez v. Laredo Junior Coll.*, 706 F.2d 731 (5th Cir. 1983) and *Boswell v. Claiborne Par. Det. Ctr.*, No. 14-31250, 2015 WL 6161810 (5th Cir. Oct. 21, 2015) (unreported). In *Boswell,* this Court found the trial court's dismissal of an inmate's claims as frivolous was unsupported and remanded the claims. Nothing in this decision stands for the proposition that the continuing violation theory is available to any § 1983 claims pled. Also, the *Perez* decision is an employment matter which, as noted above, has statutory language to support a pattern or practice claim. The alleged continuing violation in *Perez,* the continued refusal of a raise to Mr. Perez while providing other

faculty a raise based on similar circumstances, was not just a pattern or practice, but the exact same act and harm occurring twice a month, every month. *Id.* at 734.[10] Thus, this Court remanded the matter to the trial court to hear evidence to determine if Mr. Perez was being denied his raise every paycheck or if this practice was no longer occurring. *Id.* at 734-35. If Mr. Perez was being denied his additional income on every paycheck, this claim was viable not because of a continuing violation based on several different acts of different actors with different harms, but because the same act was reoccurring anew every two weeks, very different than the allegations presented by Plaintiffs here.

Moreover, there is similarly a lack of support for the use of a continuing violation theory under the Fourteenth Amendment. "No court to date has accepted this theory in the context of plaintiff's due process claims. In fact, courts, including this one, are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases." *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 n.27 (5th Cir. 1993). Stated plainly, "[a] plaintiff cannot use the continuing violation theory 'to resurrect claims about discrimination, [or in this case due process,] concluded in the past, even though its effects persist.'" *Id.* at 867

---

[10] Arguably, this rationale is directly contradicted by the reasoning in this Court's more recent, albeit unreported, decision in *Rushing v. Yazoo Cnty. by & through Bd. of Supervisors of Yazoo Cnty.*, 861 F. App'x 544, 553 (5th Cir. 2021) (unreported), though both declined to apply the continuing violation doctrine.

(5th Cir. 1993) (citing *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971 (5th Cir.1983); *Delaware State College v. Ricks,* 449 U.S. 250 (1980)). As this Court has confirmed, it "must be careful not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation." *Id.* (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977)). A plaintiff "cannot use the continuing violation theory to save his due process claims based on the denial of" prior attempts to overturn decisions, such as prior unsuccessful challenges to zoning decisions. *See Id.* at 866–67.

Therefore, for the same reasons Plaintiffs' Claim I was correctly dismissed, so, too, were Claims II and III.

> ### 2.  <u>Claim II (Equal Protection): Plaintiffs failed to plead facts of a discriminatory intent or lack of equal treatment.</u>

Even if Claim II was not prescribed, it should be dismissed on Defendant's motion for failure to state a cause of action because facts regarding a discriminatory intent or lack of equal treatment were not pled.

The Fourteenth Amendment has been interpreted by the Supreme Court as "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). "State actors may create classifications facially, when such categorization appears in the language of legislation or regulation, . . . or *de facto*, through the enforcement of a facially neutral law in a

43

manner so as to disparately impact a discernible group." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *McGinnis v. Royster*, 410 U.S. 263, 270 (1973)).

Where a "[p]laintiff's property has not been treated differently from other similarly situated properties in its zoning classification," no violation of the Fourteenth Amendment is present. *See Wheelahan v. City of New Orleans*, No. CV 19-11720, 2020 WL 1503560, at *16 (E.D. La. Mar. 30, 2020) (finding plaintiff had not pled a Fourteenth Amendment Equal Protection claim). Even an allegation that a zoning ordinance impacts an individual plaintiff's ability to utilize their property does not support a Fourteenth Amendment Equal Protection claim if there is no allegation that a similarly situated property owner was treated differently. *Id.* at *19.

"The Supreme Court has instructed us time and again, however, that **disparate impact alone cannot suffice to state an Equal Protection violation**; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Id.* (**emphasis** added). Rather, "**a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury**." *Id.* (citations omitted) (**emphasis** added). A racially motivated discriminatory intent is a necessity for an equal protection claim. "[T]he absence of proof of discriminatory intent forecloses any claim that the official action challenged

44

in this case violates the Equal Protection Clause of the Fourteenth Amendment."
*City of Memphis,* 451 U.S. at 119 (citing *Washington v. Davis*, 426 U.S. 229 (1976);
*Arlington Heights*, 429 U.S. 252 (1977)). "Discriminatory purpose in an equal
protection context implies that the decisionmaker selected a particular course of
action at least in part because of, and not simply in spite of, the adverse impact it
would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65
(5th Cir. 1992).

When a zoning decision is challenged as violating the Fourteenth
Amendment, it is the trial court's function to "examine the purpose underlying the
decision." *Arlington Heights*, 429 U.S. at 268. Even where a zoning decision "does
arguably bear more heavily on racial minorities," or has a "discriminatory 'ultimate
effect,'" a constitutional violation is not present unless the "sequence of events
leading up to the decision" are indicative of a discriminatory motive. *Id*. at 269, 271.
A discriminatory purpose requires a showing of far more than an "awareness of
consequences." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).
Without the presence of a discriminatory purpose behind a zoning decision, no
constitutional violation is present. *See Arlington Heights*, 429 U.S. at 269, 270.

Here, the Complaint fails to provide any factual allegations that St. James
Parish's unanimous adoption of the Land Use Plan was motivated by a
discriminatory intent. Representatives from every district, including Districts 4 and

5, were represented in the unanimous adoption. ROA.670, ¶ 275, n. 192. The Complaint discusses historical events leading up to the 2014 decision that do not allege a discriminatory intent of the Parish, its planning commission, or parish council when the Land Use Plan was adopted. Indeed, the Complaint makes it clear that St. James Parish operated for 93 years "without a zoning ordinance or land use plan" and that land use rules were enacted over concerns related to control of private property, not any type of discriminatory intent. ROA.667, ¶¶ 266, 275.

The Complaint contains numerous factual assertions that, if proven true, could show only a possible disparate impact on Blacks (which is denied). Importantly, however, the Complaint lacks factual assertions regarding any action or statement by the Parish that establishes the Land Use Plan was adopted for the purpose of impacting Black residents or based on discriminatory intent. Even if Plaintiff proves all the facts in the Complaint, there is no evidence that the elected officials who adopted the Land Use Plan were motivated, even in part, by a discriminatory intent. At best, the Complaint alleges historic unrelated discriminatory actions and then seeks to impute past actions to current decisions made by duly elected officials without alleging that any discriminatory intent guided those current and specific decisions.

Also, the Land Use Plan treats all residents within a zoning classification equally, without any consideration of race or other factors. For example, residents

of District 4 are not treated differently based on race. The Complaint lacks any allegation that the Land Use Plan does not treat all property owners within the same zoning classification equally or that the Parish has treated Black property owners differently than white property owners within the same zoning classification. As a result, Plaintiffs have not pled a basis for an equal protection violation.

The Complaint contains only sweeping, unsupported conclusions of discrimination which are properly disregarded on a Rule 12(b)(6) motion analysis. *See* ROA.603, 734, ¶¶ 15, 567. Lacking any factual allegations of a discriminatory intent on the part of the Parish, the Complaint does not plead a claim under the Fourteenth Amendment.

### 3. Claim III Substantive Due Process (Bodily Safety and Integrity): Plaintiffs failed to plead facts of a lack of rational objective.

"There are two types of due process protections: substantive and procedural." *Monumental Task Comm., Inc. v. Foxx*, No. 16-12495, 2016 WL 5780194, at *4 (E.D. La. Oct. 4, 2016). Plaintiffs' Claim III purports to put forth a substantive due process claim.

"Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them." *Id.* (citations omitted). To "establish a substantive due process violation, a plaintiff must first show the existence of a constitutionally protected right to which the Fourteenth

5022572.v2

Amendment's due process protection applies." *Id.* "If there is no denial of life, liberty, or property, then the government is not required to provide due process." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016).

However, assuming a denial of a constitutionally protected right is established, the question becomes "whether a rational relationship exists between the [policy] and a *conceivable* legitimate governmental objective.'" *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174–75 (5th Cir. 1996) (citations omitted) (emphasis in original). "If the question is at least debatable, there is no substantive due process violation." *Id.* at 175. "A plaintiff's substantive due process challenge to a local ordinance may be dismissed on a Rule 12(b)(6) motion if the ordinance is rationally related to a legitimate government interest." *Monumental Task Comm., Inc.,* 2016 WL 5780194, at *4. "Only an abuse of power that 'shocks the conscience' is actionable through a substantive due process claim." *Nobles Const., L.L.C. v. Par. of Washington*, No. CIV.A. 11-2616, 2012 WL 1865711, at *5 (E.D. La. May 22, 2012), aff'd sub nom. *Nobles Const., L.L.C. v. Washington Par.*, 544 F. App'x 263 (5th Cir. 2013) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002)) (dismissing substantive due process claim on Rule 12(b)(6) motion to dismiss where plaintiff failed to demonstrate conduct was sufficiently egregious to rise to the level of shocking the conscience).

5022572.v2

A defendant need not prove or establish the rational relationship between the challenged policy and a government objective as "( … the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis." *FM Properties Operating Co.,* 93 F.3d at 174. Rather, if an objective reviewer finds a "*conceivable* legitimate governmental objective," no substantive due process claim exists. *Id.* at 175 (finding city council policy to enforce building quality and safety standards had legitimate governmental objective).

The District Court has previously held that St. James Parish's Land Use Plan was based on a rational objective. Upon prior review of St. James Parish's Land Use Plan, the District Court found: "The Land Use Ordinance provides that it was enacted to guide the future development of St. James Parish," citing the March 5, 2014 resolution adopting the Land Use Plan. *Petroplex Int'l v. St. James Par.,* 158 F. Supp. 3d 537, 542 (E.D. La. 2016). The District Court concluded that "the Council based its decision on the findings outlined in the draft comprehensive plan generated by the planning commission. Though Plaintiffs may disagree with Defendants' response to the facts outlined in the comprehensive plan, **the Court cannot find that this response was devoid of any conceivable rational basis**." *Id*. As such, in *Petroplex* the federal substantive due process claim against St. James Parish was dismissed with prejudice. *Id.* at 543. The same result is compelled here.

5022572.v2

## C. Issue Presented 1—Claim IV: 42 U.S.C. § 1982 - Property Rights of Black Citizens

42 U.S.C. § 1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The property rights protected under 42 U.S.C. § 1982 "concern[] the right of black persons to hold and acquire property on an equal basis with white persons and the right of blacks not to have property interests impaired because of their race." *City of Memphis*, 451 U.S. at 122.

### 1. Plaintiffs' 42 U.S.C. § 1982 claims are prescribed.

Because 42 U.S.C. § 1982 does not have an independent prescriptive period, Louisiana's one-year prescriptive period for damage to immovable property is applicable. As such, the District Court properly dismissed Plaintiffs' Claim IV as prescribed. ROA.1032.

### 2. Plaintiffs failed to plead intentional discrimination.

Even if Plaintiffs' Claim IV was not prescribed, Plaintiffs did not plead specific facts regarding intentional discrimination to state a cause of action under 42 U.S.C. § 1982.

A 42 U.S.C. § 1982 claim requires that the defendant act with a discriminatory intent directed at the plaintiffs on account of their race. A plaintiff's complaint "must allege with specificity facts sufficient to show or raise a plausible inference of 1) the

50

defendant's racial animus, 2) intentional discrimination, and 3) that the defendant deprived plaintiff of their rights because of race." *Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631 (E.D. La. 2006) (citing *Brown v. Philip Morris Inc.,* 250 F.3d 789 (3d Cir. 2001)). As the Supreme Court confirmed in *City of Memphis,* a municipal regulation that has an "adverse impact on a particular neighborhood will often have a disparate effect on an identifiable ethnic or racial group." 451 U.S. at 128. This alone is not indicative of a discriminatory intent or racial animus. *Id.* Where the allegations establish "no racially discriminatory motive on the part of the City Council" for the challenged decision, an actionable claim is not present. *Id*. at 126.

Plaintiffs failed to allege any facts that are indicative of a discriminatory *intent on the part of* St. James Parish in adopting the 2014 Land Use Plan. The Complaint provides only baseless conclusions without supporting factual allegations. At best, the Complaint suggests an adverse impact on Black residents in Districts 4 and 5 (which is denied) but does not establish or allege a "racially discriminatory motive on the part of the [Parish] Council." Plaintiffs' historical recitation of racial discrimination in Louisiana and in St. James Parish is insufficient to state a § 1982 claim.

### D.    Issue Presented 2—Claim VI: RLUIPA (Discrimination)

The Religious Land Use and Institutionalization Persons Act of 2000 was enacted by Congress to target local land-use regulation and ensure "greater

protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). RLUIPA generally provides two types of claims, designated by subsections (a) and (b) respectively, which include substantial burden claims and discrimination and exclusion claims. For a discrimination claim, RLUIPA states: "No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. §2000cc(b)(2). "[L]and use regulation" is defined by RLUIPA as "a zoning or landmarking law, or the application of such a law, that limits or restricts **a claimant's** use or development of land (including a structure affixed to land), **if the claimant has** an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. §2000cc-5(5) (**emphasis** added). A "claimant" is "a person raising a claim or defense under" RLUIPA. 42 U.S.C. 2000cc-5(1).

Except as otherwise provided by law, a cause of action "arising under an Act of Congress enacted" after December 1, 1990, may not be commenced later than four years after the cause of action accrues. 28 U.S.C. § 1658. Because there is no specified statute of limitations for a cause of action brought under RLUIPA, the District Court correctly concluded that the four-year catch-all federal statute of limitations governs claims brought under this statute. R.1032; *see Id.*; *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

5022572.v2

The statute of limitations for an action brought under RLUIPA begins to run on the date on which the plaintiff's claim "accrues," *i.e.,* on the day that the governmental entity issues a final decision resulting in the complained-of action. *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192 (1997). Plaintiffs must complain of actionable harm accruing *on or after* March 21, 2019 for their RLUIPA claim to be timely. This specifically forecloses Plaintiffs' claims regarding the 2014 adoption of the Land Use Plan, the April 23, 2014 land use approval of South Louisiana Methanol, the 2018 amendment to the Land Use Plan, the January 24, 2019 land use approval of Formosa, ROA.738, ¶587, and any other actions prior to March 21, 2019. Finding "Plaintiffs' claims accrued when the Parish Council adopted the 2014 Land Use Plan and because the continuing violation doctrine does not apply in this case," the District Court correctly held that that Plaintiffs' Claim VI "prescribed in 2018 and must be dismissed." ROA.1032.

Plaintiffs argue that the buffer zone contained in the 2014 Land Use Plan— but that was removed in the 2018 amendment—was discriminatory. Again, claims regarding the 2014 Land Use Plan have prescribed, a finding even more applicable here where the 2018 Amendment removed the referenced buffer zone. ROA.676, ¶ 300. Plaintiffs then argue that the Parish has continued to approve industrial facilities within two miles of majority Black, Baptist churches while not doing the

same for Catholic churches in majority-white districts. Doc. 47, p. 49. This allegation that the Parish is approving industry in the two districts zoned as industrial—Districts 4 and 5—while not approving industry in the Districts not zoned for industrial is, at its core, an attack of the 2014 Land Use Plan.

Plaintiffs argue that the District Court erred in disregarding several allegations supporting their RLUIPA claim that occurred since March 21, 2019. Doc. 47, p. 48. Plaintiffs also allege specific events, as follows: 1) March 25, 2019 approval of Syngas Energy Holding, LLC's proposal to construct a methanol production facility in St. James Parish located two miles from a Baptist church; 2) May 20, 2019 approval of a land use permit from Wanhua Chemical U.S. Operations one mile from a Baptist church; and 3) July 31, 2023 approval of Koch Methanol's application to expand its operations with a pipeline located two miles from a Baptist church. Doc 47, p. 49. However, Wanhua later withdrew its application, ROA.695, ¶ 390, and there are no facts pled that Syngas—which was permitted after the two-mile buffer was removed—was actually constructed or received any state or federal permit to emit pollutants, ROA.702, ¶¶ 419-31, and, thus, there is no actionable harm. The July 31, 2023 allegation is not in the Complaint and are new facts raised herein which much be disregarded. See FN 6.

Regardless, these actions do not allege a RLUIPA claim to overcome prescription as these are not actions which discriminate against any assembly or

institution on the basis of religion or religious denomination against Mount Triumph, the only plaintiff to assert this claim. Mount Triumph is not a 'claimant' as that term is defined in RLUIPA. These are not actions taken by the Parish that limit or restrict Mount Triumph's use or development of *their* land, or that impact property *owned by* Mount Triumph and prevent *their* religious assembly or institution. As with all of Plaintiffs' claims, its RLUIPA claims were insufficiently pled and prescribed and properly dismissed by the District Court.

## CONCLUSION

WHEREFORE, for the reasons set forth above, St. James Parish respectfully states that this Court should affirm the decision of the District Court.

<div style="margin-left:40%">

RESPECTFULLY SUBMITTED,
**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*s/ Carroll Devillier, Jr.*
John King, La. Bar No. 17004
John.King@bswllp.com
Thomas Temple, La. Bar No. 26130
Thomas.Temple@bswllp.com
Carroll Devillier, Jr., La. Bar No. 30477
carroll.devillier@bswllp.com
Danielle L. Borel, La. Bar No. 35669
danielle.borel@bswllp.com
*Attorneys for St. James Parish*

</div>

May 22, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2024, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by

using the CM/ECF system.  I certify that all participants in this case are registered

CM/ECF users and that service will be accomplished by the CM/ECF system.

<div align="right">

*s/Carroll Devillier, Jr.*
Carroll Devillier, Jr.

</div>

5022572.v2

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that:

1) This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure Rule 32(a)(7)(B) because it contains 12,991 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure Rule 32(f) and Circuit Rule 32.2.

2) This brief complies with the typeface requirements of Federal Rules of Appellate Procedure Rule 32(a)(5) and Circuit Rule 32.1 and the type-style requirements of Federal Rules of Appellate Procedure Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

3) Any required privacy redactions have been made pursuant to Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and the brief has been scanned for viruses using Windows Defender and is free of viruses.


May 22, 2024

<div style="text-align: right;">

<u>*s/Carroll Devillier, Jr.*</u>
Carroll Devillier, Jr.

</div>

5022572.v2